[No. 7574.]

## LEMASTER V. THE PEOPLE.

1. CRIMINAL LAW—*Embezzlement of Corporate Funds—Consent of Officers*—Where the officers of a corporation fraudulently consent to the appropriation of its funds by one of their number, on pretense of satisfying a factitious and groundless claim which he asserts against the corporation such consent is no defense to the charge of embezzlement.

2. ——*Evidence—Depositions*—In order to enable certain nonresident witnesses for the people to return to their homes their depositions are taken, under the statute (Rev. Stat., Secs. 7277-7279), by consent and in the presence of the accused. It is not error to receive such depositions, in behalf of the people though no affirmative proof is given that the personal attendance of the witnesses might not be procured.

3. ——*Letters of Corporation Admissible Against the Managing Officer*—Information against the managing officer of a corporation for embezzling the corporate funds. Letters purporting to come from the corporation, and shown to have been received, in due course of mail, by the witnesses producing them, and which relate to transactions had between the corporation and those so producing them, at a time when the accused was controlling the affairs of the corporation and which tend to show the source of the funds in question, are admissible, without evidence identifying the handwriting of such letters.

4. ——*Copies of Letters*—In the same case copies of letters written or dictated by the accused, in reply to those received from the corporation, were held admissible against him, the originals not being produced nor accessible.

5. ——*Copies of Letters of the Corporation*, found in its impression book, written at defendant's dictation, and mailed to persons in other states, were held admissible against him, without any showing to excuse the non-production of the originals. The book was regarded as, in effect, containing the letters of the accused, and the letters a declaration against interest.

6. ——*Annual Report of the Corporation*, filed in the secretary's office and certified therefrom, and tending to show criminal intent, held admissible for the people.

7. ——*Account Books of the Corporation*—Information against the managing officer of a corporation for the embezzlement of its funds. The defense being that the moneys in question had been properly applied by the accused to discharge salary due him, the account books of the company were held admissible to show what had in fact been paid him on account of salary.

The evidence held sufficient to identify the books produced, as those of the corporation.

8. ——*Expert's Examination of Account Books*—Voluminous Books of Account of such character as to render it difficult for a jury to arrive at correct conclusions therefrom, may be explained by an expert accountant, and the true state thereof shown by his testimony —the books being produced in court.

9. ——*Relevancy*—The corporation, the embezzlement of whose funds was charged against the prisoner was in effect the accused himself. *Held*, that its insolvency might be shown as bearing upon the intent of the accused.

10. ·Witness—*Competency*—One K, while in the employ of the corporation whose moneys the prisoner was alleged to have embezzled had been giving information to the attorneys of certain parties ·with whom the company was dealing. Being discharged he was at once

taken into the care of, and supported by, one of these parties, a cred-
itor of the company, and the same by whom the present accusation
was instigated and prosecuted. The same witness had made oath to
the information against the prisoner. *Held*, that he was nevertheless
a competent witness for the people.

11. Writ of Error—*Harmless Error*—The admission of evidence
cures any error in its previous exclusion.

The admission of evidence having no bearing upon the matter
in issue is harmless.

12. Evidence—*Cross-Examination*—The extent to which cross-
examination may be carried is largely in the discretion of the trial
court. One who had been a prisoner in the county jail at the same
time with the accused, testified to conversations had with him during
such imprisonment. This witness had been in jail on several occa-
sions. *Held*, not an abuse of discretion to exclude a question pro-
pounded on cross-examination, as to the charge upon which he had
first been arrested.

13. Instructions—*To Be Construed As a Whole*—Where the law
of the case is clearly and explicity set forth in one point of the charge
the effect of equivocal language elsewhere therein is eliminated.

*Error to Denver District Court.*—Hon. Greeley W.
Whitford, Judge.

Mr. Thomas M. Morrow, for plaintiff in error.

Hon. Benjamin Griffith, attorney general, and Mr.
George D. Talbot, special counsel, for the people.

Mr. Justice Hill delivered the opinion of the court:

The plaintiff in error was convicted of embezzling $3,700
from The D. F. LeMaster Brokerage Company, a corporation;
he brings the case here for review upon error.

It is earnestly urged that the evidence is insufficient to
sustain the verdict. The defendant contends, that, while he
appropriated the money, he was guilty of no crime, for the
reason that he was entitled to it, as and for salary for serv-
ices previously rendered to the corporation, and that he had the
consent of the company to so apply the money. The people
claim: first, that the defendant had been paid his salary in full
and that the claim of $3,700 for back salary was a trumped-up

claim; second, that if the company was indebted to him for salary, it being insolvent to his knowledge, and owing various parties large amounts for flour which it had but recently purchased on credit and sold for cash, it was fraudulent for him to thus convert the money so due them to his own use, and that even assuming he was a creditor that because he was also a director, an officer and its manager, his duty was to hold this money in trust for all the creditors; that upon account of these facts and the circumstances under which he appropriated it, he was guilty of embezzlement. It is unnecessary, in an opinion, to analyze or set forth in detail the evidence pertaining to the transaction. It is sufficient to state that we have given it careful consideration and are of the opinion that there is sufficient evidence to justify the verdict.

Prior to the trial, depositions of witnesses residing in Kansas were taken, in the presence of the accused, pursuant to a waiver of notice by him. These were taken under the provisions of General Sections 7277-7279, Revised Statutes, 1908. When the district attorney offered to read these depositions to the jury, counsel for the defendant objected, claiming that no proper foundation was laid; that there was no showing that the witnesses could not be produced. The objection was overruled. We find no error in this respect. Section 7278, *supra,* provides, "that such deposition shall not be used if, in the opinion of the court, the personal attendance of the witness might be procured by the prosecution, or is procured by the accused." It stands admitted that these witnesses were residents of Kansas, their depositions were taken in order that they might return to that state. By the ruling it was evidently the opinion of the court that the personal attendance of the witnesses might not be procured by the prosecution, there was no offer by the defense to produce them. The statute says "if, in the opinion of the trial court," etc.; we find no abuse of the discretion exercised.

Complaint is made to the admission in evidence of certain letters purporting to have come from The D. F. LeMaster

Brokerage Company. It is claimed there was no attempt to identify the signature as the handwriting of D. F. LeMaster. They were received in the regular course of mail; their contents were in connection with a general line of transactions between the corporation (of which the plaintiff in error was the controlling factor) and the sundry witnesses, and were introduced principally for the purpose of disclosing the transactions which led up to and disclosed from what source the corporation received the money which the jury found was thereafter embezzled by the defendant. We do not understand that it requires the testimony of an expert in handwriting to make admissible letters of this character. We think they were sufficiently identified for the purposes offered.

Complaint is made to the admission in evidence of carbon copies of letters written by witnesses in reply to those received from the defendant's company, either written or dictated by him. Upon his objections to the copies the defendant was requested to produce the originals; he stated his inability to do so and from his counsel's statements it appears that the allowance of time after the request was made would have been of no assistance in this respect. The witnesses testified that the carbon copies were made at the same time and that the originals were properly mailed, etc. Under these circumstances we think the copies were properly admitted.

A Mr. Grandt testified that he had been employed by The D. F. LeMaster Brokerage Company. An impression copy book was placed in his hands which he identified as belonging to the company, and he referred to copies of various letters therein, stating that the originals of which the impressions in the book were copies had been written and mailed to various persons and companies; that he wrote the greater majority of the letters at the dictation of the defendant. The pages in this book thus referred to by the witness were offered in evidence. It is claimed that this was prejudicial error, as no effort was shown to have been made to obtain the originals. We do not think so. The object of this testimony was to show the crimi-

nal intent of the defendant. The letters were shown to have been mailed to sundry people and companies in other states, who were beyond the jurisdiction of the court. The book contained impression copies taken at the time; we think this sufficient without further showing to justify their admission. This was in substance the defendant's impression book of his own letters. It contained declarations against interest and for this purpose was properly admitted.—D. & R. G. R. R. Co. v. Wilson, 4 Colo. App. 355.

A certified copy of the annual report of The D. F. LeMaster Brokerage Company, filed in the office of the secretary of state, March 2nd, 1910, was offered in evidence over the objection of the defendant. We find no objection to this evidence. It likewise went to show the criminal intent of the defendant; if otherwise, it was harmless error.

The books of The D. F. LeMaster Brokerage Company were properly admitted in evidence, as well as the defendant's salary account therein, showing what he had been paid, etc. All had a bearing upon his contention that he had, in good faith, appropriated this $3,700 to his own use upon account of salary. This line of testimony was especially applicable when it is considered that this was practically a one man corporation. It is claimed that the books of the company were not properly identified. J. F. Spencer testified, that he was the trustee in bankruptcy of The D. F. LeMaster Brokerage Company; that as such trustee he had the books of that company and that he recognized the books in court before him as the. books of the company. A Mr. Grandt testified that he had been employed by the company; that the defendant was in. charge of its affairs and that he recognized the books in court as the books which he saw while employed by the company. We think the books were sufficiently identified.

Many exceptions were taken to the evidence of E. D. Kellogg; he had been in the employ of The D. F. LeMaster Brokerage Company just prior to the time it went into bankruptcy. It is claimed, that while thus employed he was en-

gaged in giving alleged information to the attorneys for certain Kansas millers from whom this company purchased flour; that just before it went into bankruptcy Kellogg was discharged; that he was immediately taken to Kansas, and there supported and maintained by The Phillipsburg Milling and Elevating Company; that this concern was responsible for the defendant's prosecution, and that this witness swore to the original information in this case. Unquestionably Mr. Kellogg's testimony was very damaging to the defendant in disclosing his criminal intent, but whether or not his evidence was manufactured, as claimed, was for the jury to determine. The facts above named, if true, did not make him incompetent to testify.

It is claimed that the court erred in **refusing to admit in** evidence page 13 of the minute book of the corporation when John Bernard, a witness called by the defendant, identified the page and book. Thereafter, the defendant took the stand and this identical evidence was admitted during his examination. This eliminates any question of prejudicial error concerning its original rejection.

One James W. Bennett, who had been incarcerated in the county jail several times prior to the trial, testified to an alleged conversation between himself and the defendant, while both were in jail. Counsel claims an inspection of his evidence will show that the alleged conversation had no bearing whatever on the issue of the case. If that is true, we fail to appreciate wherein any prejudicial error was committed. It would be harmless error at least. Upon cross-examination the court declined to compel the witness Bennett to answer what the first charge was on which he had been incarcerated. The evidence disclosed that the witness was then in jail and had been for some time. He was not asked if he had ever been convicted of a crime. If he had not been, but was awaiting trial, we think the general rule concerning impeaching testimony was applicable to him the same as any other witness.—*Tollifson et al. v. People,* 49 Colo. 219. The witness' history, pertaining

to his sojourn in the county jail, was gone into quite fully. The jury had this before them with which to determine the weight to be given his testimony. The extent to which counsel may go upon cross-examination in such matters is largely within the discretion of the trial court. We cannot say that the court abused its discretion in the respect referred to.

E. F. Arthur, an expert accountant, was permitted to testify that he had made an examination of the books of The D. F. LeMaster Brokerage Company and as to certain facts which they disclosed, one of which was that the company was insolvent at the time of the alleged embezzlement. It is claimed this was prejudicial error. The books were in court subjct to inspection; they were quite voluminous and of such a character to render it difficult for the jury to arrive at a correct conclusion concerning their exact condition. Under such circumstances resort may be had to the aid of an expert bookkeeper to examine and explain the true state of their condition, etc.—*Brown v. First National Bank*, 49 Colo. 393. It is further urged, that it was prejudicial error to thus show the insolvency of the corporation; that as the charge was for embezzlement it was immaterial whether the corporation was solvent or insolvent. This last statement is unquestionably true, but, when we conisder that this was in fact what is commonly termed a one man corporation, and that man was the defendant, its solvency would have a bearing upon the question of his criminal intent, when it is shown, and in fact admitted, that he at this one time took $3,700 of its funds and appropriated it to his own use, under the alleged claim of back salary then owing him by his corporation.

About one hundred twenty assignments of error have been made pertaining to the admission and rejection of testimony. We have answered in detail what appears to us to be the most important. It would unnecessarily lengthen this opinion to thus answer all; we have considered them but find no prejudicial error in this respect.

Numerous assignments are made pertaining to instructions given, refused and modified. They all center around the correctness of Instruction No. 10, which, in substance, advised the jury that while it is essential to constitute the crime of embezzlement that it be proved beyond a reasonable doubt that the moneys were taken and converted without the consent of the corporation, nevertheless, that the officers and directors could not legally consent to a fraudulent transaction, and that when, knowing the insolvency of the corporation, etc., they fraudulently consented to such a transaction, that such consent was illegal and the appropriation would still constitute the crime of embezzlement.

The rule, that it is no defense to a charge of embezzlement of the funds of a corporation to show that the moneys were taken by its consent where the officers and stockholders fraudulently consented thereto, in reason is supported by an overwhelming weight of authority.—*Reeves v. State,* 11 So. (Ala.) 158; *United States v. Harper,* 33 Fed. 471; *State v. Kortgaard,* 64 N. W. (Minn.) 51; *Taylor v. Commonwealth,* 75 S. W. (Ky. App.) 244; *McKnight v. United States,* 115 Fed. 972; *State v. Browning,* 82 Pac. (Or.) 955; *Secor v. State,* 95 N. W. (Wis.) 942; *State v. Foust,* 19 S. E. (N. Car.) 275; *State v. Nicholls,* 23 So. (La.) 980; *People v. Butts,* 87 N. W. (Mich.) 224; *Saranac & L. P. R. R. Co. v. Arnold,* 167 N. Y. 368; *People v. Ward,* 66 Pac. (Calif.) 372; *Holmes et al. v. Willard,* 125 N. Y. 75.

It is further claimed that this instruction is erroneous because it tells the jury that if the corporation was insolvent it would be unlawful for it to pay the defendant's claim and thereby make him a preferred creditor, because it says that the stockholders and directors cannot consent to an unlawful act on the part of the corporation; that from this language if the payment was unlawful, although made in good faith, the defendant had to be found guilty. We do not so understand the instruction, but to the contrary it says that the jury must further believe from the evidence, etc., that this was done while

the company was insolvent and with the intention that the money was to be fraudulently converted from the corporation and fraudulently diverted from the payment of the creditors of the corporation, etc. As we read them in the manner there used, the words "fraudulently converted" and "fraudulently diverted" apply to criminal acts which include the intent, and not to where it was done in good faith, yet was in fact unlawful. In addition it is elementary that instructions must be considered as a whole. By Instruction No. 9 the jury were told that it would be a complete defense if the moneys were taken by the defendant on a claim for back salary, if this was done in good faith and without any intention on his part to defraud the corporation or its creditors, etc.; yet if the claim for back salary was not made in good faith, but if it were a mere pretense, or show, or device on his part to obtain the money and convert it to his own use, and to give the transaction the appearance of legality it was put upon the ground of a claim for back salary, that it would not constitute a defense. By Instruction No. 11 the jury were told, in substance, that in order to convict they must find that the company was under the control and management of the defendant; that it was insolvent; that this condition was known to the defendant; that he had this money in his possession by virtue of his employment and with this knowledge of the company's condition that he applied and converted the money to his own use under a claim or pretense that the same was due him for back salary, which had not been paid, and that this claim for back salary was not as a matter of fact a *bona fide* claim, and was not made in good faith, but was a mere pretense on the part of the defendant to convert the money to his own use instead of letting the corporation apply the money to the payment of all its debts.

When Instructions Nos. 9 and 11 are considered in connection with No. 10 complained of, we are of opinion that they eliminate any possibility of conviction in case the money was taken under a claim for back salary made in good faith, and also any question concerning the consent of the board of direc-

tors to the application of these funds in payment of back salary, if given in good faith, regardless of whether it was intended to give a preference to the defendant or otherwise. This makes unnecessary any consideration of the question of the validity of the acts of the officers of an insolvent corporation, where in good faith, they attempt to make a preference in favor of one creditor.

Perceiving no prejudicial error the judgment is affirmed.

*Affirmed.*

Chief Justice Musser and Mr. Justice Gabbert concur.

Decided March 3, A. D. 1913. Rehearing denied April 7, A. D. 1913.