No. 11,896.

CLIFF *v.* THE PEOPLE.

Decided July 2, 1928.

Mr. PAUL P. PROSSER, Mr. W. C. REILLY, for plaintiff in error.

Mr. WILLIAM L. BOATRIGHT, Attorney General, Mr. WILLIAM W. GAUNT, Assistant, for the people.

*Department Two.*

MR. JUSTICE BUTLER delivered the opinion of the court.

ALLEN Cliff, hereinafter referred to as the defendant, was found guilty of embezzlement, and was sentenced to imprisonment in the penitentiary. He claims that reversible errors were committed.

1. It is claimed that the prosecution was under section 6734 of the Compiled Laws (act of 1907); that that section, so far as it relates to bankers, was impliedly repealed by the act of 1913 (C. L. § 2675). This objection was made first by a motion to quash the information, and was renewed several times during and after the trial. The act of 1907 relates to the crime of larceny by embezzlement. It is a general statute on that subject. The act of 1913 is a special statute relating only to banks and banking. It makes embezzlement by a banker a felony regardless of the amount embezzled (C. L. § 2740);

whereas, under the act of 1907, whether it is a felony or a misdemeanor depends upon the amount embezzled (C. L. §§ 6734, 6719, 6738). The maximum penalty under the act of 1913 is confinement in the penitentiary for 20 years and a fine of $2,000 (C. L. § 2740); whereas, under the act of 1907, the maximum penalty that can be imposed is confinement in the penitentiary for 10 years. It clearly was the intention of the legislature to withdraw from the operation of the earlier and general act the crime of embezzlement by bankers, and place it in a special class by itself. This being true, it follows that, so far as bankers are concerned, the act of 1913 supersedes and impliedly repeals the act of 1907.

2. Is the information sufficient under the act of 1913? The defendant claims that it is not. Section 23 of that act (C. L. § 2675) provides: "No officer, director, owner or employe of any bank shall, directly or by indirection, embezzle, abstract or misapply, or cause to be embezzled, abstracted or misapplied, any of the funds or securities or other property of or under the control of a bank, with intent to deceive, injure, cheat, wrong or defraud any person."

The information charges: "That Allen Cliff, late of the county of Routt, and state of Colorado, on or about the 1st day of October in the year of our Lord one thousand nine hundred and twenty-six at and within the county and state aforesaid then and there being an officer, to-wit: president of the Routt County Bank, a corporation then and there duly incorporated and existing under and by virtue of the laws of the state of Colorado, did then and there without consent of the said Routt County Bank fraudulently and feloniously embezzle and convert to his, the said Allen Cliff's own use, the sum of $4,000.00 in money of the value of $4,000.00 of the personal property and moneys belonging to and in possession of the said Routt County Bank with the intent to steal, the same, which said money was then and there the subject of larceny and came into the possession of said Allen

Cliff by virtue of said office, and so in the manner and by the means aforesaid, he, the said Allen Cliff, did then and there feloniously and fraudulently steal, take and carry away the said $4,000.00 of the value of $4,000.00 of the personal property, goods, chattels and moneys belonging to and in the possession of the said Routt County Bank, contrary to the form of the Statute," etc.

(a) It is said that the information is defective because it does not allege that the act was committed with intent "to deceive, injure, cheat, wrong *and* defraud." Funds may be abstracted or misapplied without any intent to deceive, injure, cheat, wrong or defraud. It may be done innocently. It is only when such specific intent exists that the act comes within the provisions of section 2675; hence, where abstraction or misapplication is charged, it is necessary to allege such specific intent. But where embezzlement is aptly charged, it is done in words that sufficiently charge the criminal intent. The information in the present case sufficiently charges the intent to injure, wrong and defraud the bank. Even where abstraction or misapplication of funds is charged it is not necessary to allege an intent to deceive, injure, cheat, wrong and defraud. An allegation that the defendant had an intent to do any one of those things is sufficient. The statute is in the disjunctive. The information is not open to the objection urged.

(b) Another contention is that the information is insufficient because the facts are alleged inferentially, and do not clearly indicate with which offense—embezzlement or larceny—the defendant is charged. We cannot sustain these objections. The information charges embezzlement with great particularity, and in terms so plain that the nature of the offense may be easily understood, not only by the defendant, but also by the jury. That is sufficient. C. L. § 7062; *Sarno v. People,* 74 Colo. 528, 223 Pac. 41. That they did understand the nature of the offense charged, there can be no doubt. Objections to technical defects that do not tend to prejudice the sub-

stantial rights of the defendant on the merits, are not encouraged. C. L. § 7103; *Balfe v. People,* 66 Colo. 94, 179 Pac. 137; *Henry v. People,* 72 Colo. 5, 209 Pac. 511; *May v. People,* 77 Colo. 432, 435, 236 Pac. 1022; *Gizewski v. People,* 78 Colo. 123, 239 Pac. 1026; *Fries v. People,* 80 Colo. 430, 252 Pac. 341; *Koontz v. People,* 82 Colo. 589, 263 Pac. 19.

3. Error is said to have occurred in the admission and rejection of evidence.

(a) Certain bank books and memoranda were admitted in evidence. The defendant complains that as the memoranda and the entries in the books are not in the handwriting of the defendant, they were inadmissible because not shown to have been made at the direction or with the knowledge of the defendant. Such direction and knowledge need not be proven by direct evidence; circumstantial evidence is sufficient. The bank was located in a small town, whose population ranged between 967 in 1920 to about 1,400 in 1927. The estimated population in 1924, according to the Colorado Year Book, was 1,060. The business transacted by the bank was limited. The active office force, we infer from the record, consisted of the president (the defendant), the cashier (the defendant's brother), and two young women, one the bookkeeper, and the other, according to the bank reports, the ''clerk.'' The reports do not show that there was any teller. There were frequent meetings of the directors. With the exception of several meetings in 1920, the defendant attended all meetings of the stockholders and directors up to and including the directors' meeting of May 11, 1926, and signed the minutes of those meetings. At many of the meetings the affairs of the bank were discussed. During the entire time that the defendant was president numerous resolutions were passed giving the defendant directions concerning the conduct of the business. For example, he was cautioned several times to refuse any further loans until business conditions should improve; was directed to resume the making of

loans, "which in his judgment would be desirable"; was authorized to withdraw bonds from the treasury of the United States; was authorized repeatedly to extend credit to certain applicants for loans, to charge certain notes to profit and loss, and to purchase additional notes from another bank; and was instructed twice to withdraw bonds from the "board of trustees." He reported repeatedly at meetings of stockholders and directors the conditions relative to the bank's business. He signed and swore to the reports made to the bank commissioner. He was the one to whom the school district officer delivered certain bonds, and from whom such officer unsuccessfully demanded the return of four bonds belonging to the district. From the testimony of his brother, it would seem that the brother, though he was the cashier, was ignorant of some of the transactions involved in the case. The by-laws provide that the president shall be "the chief executive officer of the bank, and shall administer all its business and affairs under the direction of the board or the executive committee." The evidence shows that the defendant was not a mere figure head, but was in fact the active manager of the bank's affairs. Two of the entries in the books were made from deposit slips that were in the handwriting of the defendant. The inference is unavoidable that all the memoranda and the book entries were made under the defendant's supervision, at his direction and with his knowledge. They were properly admitted in evidence. *Brown v. First National Bank,* 49 Colo. 393, 113 Pac. 483; *LeMaster v. People,* 54 Colo. 416, 131 Pac. 269.

(b) The so-called teller's balance book had on the margin penciled notations purporting to identify a date and an item of $4,000 appearing on the book. In the light of the evidence with reference to the transactions, these notations could not have prejudiced the rights of the defendant. Besides, the court instructed the jury that the notations are no part of the record and are not to be considered by the jury. We cannot sustain the defend-

ant's objection based upon the presence of these notations.

(c) When the bank commissioner's expert accountant examined the accounts of the bank, he found a file, containing a separate compartment for each day. In these compartments were kept the cash item slips for each day. Upon removing the slips from the file, the accountant made upon each slip a penciled notation of the date on the compartment from which the slip was taken. At the trial the accountant identified the slips as those taken by him from the file, and the notations as those made by him in the manner described above. The defendant objected to the introduction of these slips on the ground that they bear penciled notations that are hearsay. The objection was properly overruled.

(d) Another assignment of error is that the trial court erred in permitting the people's witnesses ''to usurp the province of the jury.'' The witnesses whose testimony is thus assailed are expert witnesses, skilled accountants. That accounting is an occupation requiring special training, is a fact recognized by the legislature when it passed the act requiring applicants for public accountant certificates to possess certain prescribed qualifications and to pass an examination. C. L. chap. 89. The books and other records were in evidence. The witnesses segregated from the mass of entries, and placed together in a group, certain entries that, in their opinion, bear a relation to one another, and they explained such relation from an expert accountant's standpoint. The fact that the entries are of such a character as to make it difficult to understand them—a situation by no means unusual when accounts are kept by or under the supervision of one who is embezzling—instead of operating to exclude expert testimony, is all the greater reason for giving to the jury the assistance afforded by the testimony of those who possess special skill in the matter of accounts. The expert witnesses did not, and could not, usurp the province of the jury. The jury was at liberty to give to their

testimony great weight, little weight, or no weight at all, depending upon all the facts and circumstances in evidence.

(e) It is objected that such witnesses were permitted "to testify to the ultimate facts," and it is said that this was reversible error. There are decisions where similar language occurs in the opinion; but such language must be taken in connection with the facts. The three Colorado cases cited are *Montelius v. Atherton*, 6 Colo. 224; *Old v. Keener*, 22 Colo. 6, 43 Pac. 127; and *Mogote v. Gallegos*, 70 Colo. 550, 203 Pac. 668. Each case was an action to recover damages, and the witness was asked to state in what amount the plaintiff's property was damaged, or to state how much the plaintiff was damaged by the defendant's failure to perform his contract. It does not appear that the witnesses were experts, and the matters were not such as to admit expert testimony. In each case, the rule for the measure of damages was clear, the facts were or should have been in evidence, and it required no special skill or learning to determine, from such evidence, the damage suffered. Cases from other jurisdictions are cited to the effect that a witness should not be permitted to testify whether a method employed was reasonably safe; or that, "according to the history of the case and according to my findings, it was a case of rape"; or "whether the defendant had killed one Edith Lavoy or whether she had killed herself." In *Meeker v. Fairfield*, 25 Colo. App. 187, 136 Pac. 471, the rule in this jurisdiction is stated thus:

"  *  *  *  it seems to be the established rule that it is reversible error to permit a witness to give his opinion as to the existence or nonexistence of ultimate facts, which are to be determined only by the jury, unless such witness is testifying as a qualified expert, or his testimony involves a description or estimate of magnitude, size, dimension, velocity, value, etc., or when, from the nature of the subject under investigation, it is difficult or impossible to state with sufficient exactness, or in detail,

the facts, with their surroundings, in such a manner as to produce upon the minds of the jury the impression that a personal observation has produced upon the mind of the witness.''

We have held it proper to ask an expert witness ''whether the road was safe or faulty at that place for the purposes for which it was then being used.'' (*Colorado Mid. Ry. Co. v. O'Brien*, 16 Colo. 219, 27 Pac. 701), and to permit an expert witness to give his opinion in regard to the condition of an elevator, ''with reference to its being a safe or unsafe appliance for the purposes for which it was intended.'' (*McGonigle v. Kane*, 20 Colo. 292, 38 Pac. 367). In *Wilson v. Harnette*, 32 Colo. 172, 75 Pac. 395, it was held proper to admit the opinion of an expert witness as to whether a discovery vein on a mining claim ''is such a lead as a reasonably prudent person would be justified in following, with an expenditure of time and money, with the hope of finding gold in paying quantities,'' although the validity of the location depended upon the finding of the jury on that very question. Lindley on Mines, § 336.

With these decisions in mind, let us consider the testimony to which the defendant objects. It is unnecessary to discuss all such testimony. It is sufficient to consider that which is most objectionable to the defendant; the testimony, in admitting which, the defendant says, ''the climax was reached'':

''Q. Now, Mr. Gill, will you proceed with your explanation where you left off? A. All right. I found on October 1, 1924, the books of the bank showed that they acquired the $4,000 through school district 38, Routt county, bonds, that the school district was not paid for the bonds on that date and, checking up that day's business, I found conclusively that the placing of the—the acquiring of the bonds by the bank, as to the offsetting for that, was three things: There was a $200 deposit slip made out to Allen Cliff, two $30 deductions, and an $800 deposit slip made out to J. B. Male, trustee, and that

an item shown on these daily cash make-up sheets of $3,000, which is shown there on the preceding day and for every day since September 8, 1924, had disappeared, so the bonds took the place of this $3,000 item which was added in cash, and they provided the necessary offset to produce the credit of $800 to Male, trustee, and $200 to Mr. Cliff.

"Mr. Prosser: Now, if your honor please, we object to that testimony and move to strike out that part of it where the witness stated he found conclusively that certain things existed, as a mere conclusion on his part, and improper testimony."

In overruling the objection and in denying the motion, the trial court committed no error. *Brown v. First National Bank,* 49 Colo. 393, 113 Pac. 483; *LeMaster v. People,* 54 Colo. 416, 131 Pac. 269.

(f) The court struck out the testimony of the defendant's witness Zimmerman in reference to a shortage resulting to the bank on account of its ownership of, and its financial relations with, the Oak Creek Times. This ruling is assigned as error. The shortage occurred years before, was not connected with, and shed no light upon, the transactions involved in this case. The ruling was right.

4. The defendant requested the court to instruct the jury that "a reasonable doubt may arise, not only from the evidence, but from a lack of evidence as well." No reversible error was committed in refusing the request. The court gave a sufficient instruction on reasonable doubt. It was not necessary, in addition thereto, to explain the various ways in which reasonable doubts can arise.

5. Objections were made to several of the instructions given by the court.

(a) It is said that instruction No. 1, the statement of the case, follows the language of the information, and that the information is insufficient. We already have

discussed the sufficiency of the information, and have decided the point adversely to the defendant's contention.

(b) The defendant objected to instruction No. 8, "because it is predicated upon section 6734, Compiled Laws, 1921, which has been superseded and repealed by section 2675 * * *." As the instruction is sufficient under the latter section, the objection was properly overruled.

(c) Instruction No. 9 is as follows: "You are instructed that to constitute a fraudulent conversion the means by which the fraudulent conversion is accomplished are immaterial. It may be effected by any exercise of the right of ownership inconsistent with the owner's rights, and with the nature and purposes of the trust, and such conversion may be either actual or constructive; but in order that it shall amount to a fraudulent conversion to one's own use, it must be effected with the intent to defraud the owner."

It was objected to "because it fails truly to define the nature and intent necessary to constitute the offense of embezzlement, and is misleading and prejudicial." The instruction supplements other instructions and, taken in connection with them, is not open to the objections urged.

6. It is not necessary to review at length the evidence in this case. The jury heard the evidence, saw the witnesses as they gave their testimony, and arrived at the conclusion that the defendant is guilty as charged. We have read the record, and have arrived at the same conclusion. The trial court refused to set aside the verdict and grant a new trial. From beginning to end the defense was conducted with exceptional ability.

Finding no reversible error in the record, we affirm the judgment.

MR. CHIEF JUSTICE DENISON, MR. JUSTICE ADAMS and MR. JUSTICE CAMPBELL concur.