## No. 18,403.

DOROTHY BRIDGES, ET AL. *v.* JOSEPHINE LINTZ.

(346 P. [2d] 571)

Decided November 9, 1959.    Rehearing denied December 7, 1959.

Mr. JOHN F. MUELLER, Mr. GREGORY A. MUELLER, Mr. ALBERT A. NORBONT, for plaintiffs in error.

Messrs. MANCINI & SINGER, for defendant in error.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

JOSEPHINE LINTZ, the defendant in error, was the plaintiff in the district court in an action for personal injuries arising from an automobile collision. Plaintiff was injured while riding as a passenger in the car of defendant. Defendant denied negligence and alleged that the relationship of driver-guest existed and that plaintiff was barred from a recovery by the guest statute. The case was submitted to a jury and a verdict in the amount of $6,317.50 was returned. Defendant, Dorothy Bridges, seeks review and reversal of this judgment on two grounds.

*First,* she contends that the trial court erred in submitting the case to the jury for the reason that plaintiff is shown by the evidence to have been a guest within the meaning of C.R.S. 1953, 13-9-1, and since her proof fell short of establishing the wanton conduct required under the statute, she cannot recover.

*Second,* defendant asserts that the court erred in allowing a Denver police officer to testify that in his expert opinion defendant was driving her vehicle at an unsafe speed.

The testimony shows that the accident occurred on March 2, 1954, on the Valley Highway in Denver. As defendant sought to enter a detour to the right her car skidded and she struck a post which had been installed for the purpose of channeling the traffic. Defendant was engaged in driving plaintiff and two other women to work. She does not allege insufficiency of the evidence to establish her negligence and consequently it is unnecessary to expand the facts concerning the accident in any further detail.

The testimony bearing on the legal relationship of

these parties showed that both women were employed at the Air Force Finance Center and became acquainted when defendant responded to an application by the plaintiff, which appeared in the Finance Center bulletin, for a ride to and from work. Under the original arrangement, plaintiff paid defendant the sum of $1.50 per week for transportation to and from work. The other passengers paid a like sum. Later this arrangement was changed so that the plaintiff drove her car on alternate days. Under this alternate driving of cars plan, neither plaintiff nor defendant paid any money but simply exchanged transportation.

1. Recently in *Houghtaling v. Davis,* 140 Colo. 327, 344 P. (2d) 176 (decided September 21, 1959), we determined a question very similar to the present one and decided it adversely to the driver of the vehicle. We there held that payment by a passenger of $1.50 per week for transportation to and from work removed the case from the operation of the guest statute. There is no discernible basis for distinguishing that case from the present one. The factual difference that actual money rather than transportation in kind was paid does not give rise to a legal difference. In both cases the relationship was an impersonal one based upon business expediency and mutual benefit. It follows that the guest statute has no application to these facts.

2. The other important contention of the defendant is that it was error to receive the testimony of Leavitt, the police officer who investigated the accident and who testified as an expert that the defendant had been traveling at an unsafe speed at the time of the accident. In order to pinpoint our decision on this question, we shall quote the actual testimony which was given. The first question propounded by plaintiff's attorney was:

"As a result of your experience in the Accident Prevention Bureau, would you say that she was going too fast for safe driving at that point?"

The court allowed defendant's counsel to propound

further questions for the purpose of laying further foundation for the answer. This testimony was as follows:

"Q. Officer, you say that at the point of this collision there was ice on the street? A. Yes. Q. Now, this was designated as a detour, was it not? A. It was, yes. Q. Do you know what type of topping it had? A. I don't recall. It wasn't topping on the detour, no. Let me check. Blacktop. Q. Blacktop? A. Yes. Q. It was thirty feet wide? A. Yes. Q. There was ice there? A. Snow and ice, yes. Q. You say there were thirty-five feet of side skid marks? A. Side sliding marks, yes. Q. Can you tell us in which direction the sliding marks went? A. I don't recall which direction they went. The car spun around. It was headed south. Q. Now, with the facts that you remember about this accident, Officer, and considering the skid marks that you found and the type of topping that was on the street and the ice and so forth, in your opinion was this car traveling at a safe speed? [Objection by defendant's counsel.] Q. Now, in your opinion, knowing all these facts, was this car exceeding a safe speed? [Renewed objection by defendant's counsel.] THE COURT: Overruled. Q. What is your answer, Officer? A. I have marked on the report 'exceeding safe but not stated speed.' Q. What do you mean by that? A. In other words, you drive according to the conditions of the weather and the roadway. If you have to drive one mile an hour to drive safely you drive one mile an hour and if you have to drive five miles an hour to drive safely you drive five miles an hour."

\* \* \*

"Q. Then in your opinion, what was the cause of this accident? A. The icy condition of the street and losing control of the car. Q. Because, in your opinion, she was traveling too fast? A. Exceeding the safe speed limit, yes."

Defendant argues that the officer was not qualified as an expert on the question in issue and further that the officer's conclusion amounted to testimony that the

defendant was guilty of negligence, which question was the ultimate one for the jury to decide. She points out that in one of its instructions the court defined careless driving as set forth in the Municipal Code of the City and County of Denver which provides:

"507.1 *Careless driving*. Every person operating a vehicle or street car on a highway or street shall drive the same at a speed and in a manner which is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing; and every driver of a vehicle . . . in compliance with the legal requirements and the duty to use due care, shall use every reasonable means to avoid endangering any person."

Hence the officer's opinion expressed a conclusion of fact which the jury was obligated to determine.

The sufficiency of the evidence to establish the qualifications and knowledge of the witness was a question for the trial court's determination and its decision is not subject to reversal unless it is clearly shown to have been erroneous. *City of Boulder v. Burns*, 135 Colo. 561, 313 P. (2d) 712. In that opinion, the Court, speaking through Mr. Justice Hall, quoted with approval the following language from *Stillwell & Pierce Mfg. Co. v. Phelps*, 130 U.S. 520, 9 S. Ct. 601, 32 L. Ed. 1035:

" 'Whether a witness called to testify to any matter of opinion, has such qualifications and knowledge as to make his testimony admissible, is a preliminary question for the judge presiding at the trial; and his decision is conclusive unless clearly shown to be erroneous * * *' "

The experience and training of the officer in the Accident Prevention Bureau of the City and County of Denver was sufficient to justify the court's decision that the witness was qualified.

Admittedly the testimony of the expert involved the ultimate conclusion which the jury was required to determine. This, however, does not of itself furnish a

basis for its rejection. Although there are authorities which indicate that the appropriate test should be whether the opinion invades the province of the jury, it would seem that the better reasoned cases reject this as the test. Rule 409 of the *Model Code of Evidence* (p. 210) expressly states that a witness may draw an inference "whether or not any such inference embraces an ultimate issue to be decided by the trier of the facts." Wigmore also rejects the usurpation of the function of the jury test as being "so misleading, as well as so unsound, that it should be entirely repudiated." 7 *Wigmore Evidence,* 3d ed. (1940), Sec. 1920. The author reasons that there is no usurpation in fact "because [the expert witness'] error [if there were one] consists merely of offering to the jury a piece of testimony which ought not to go there; and he *could not* usurp it if he would, because the jury may still reject his opinion and accept some other view, and no legal power, not even the judge's order, can compel them to adopt the witness' opinion against their own." 7 *Wigmore,* supra, §1920. *Wigmore's* views have been widely adopted in the United States. *Grismore v. Consolidated Products Co.,* 232 Ia. 328, 5 N.W. (2d) 646; *Schweiger v. Solbeck,* 191 Or. 454, 230 P. (2d) 195. According to this view, the only question is whether the witness is qualified and whether the witness can contribute evidence that "will probably aid the jury in their search for truth." *Dowling v. L. H. Shattuck, Inc.,* 91 N.H. 234, 17 A. (2d) 529. A similarly liberal view has been expressed by this Court in *National Fuel Co. v. McNulty,* 65 Colo. 176, 177 Pac. 979.

" 'The true test of the admissibility of such testimony is not whether the subject-matter is common or uncommon, or whether many persons or few have some knowledge of the matter; but it is whether the witnesses offered as experts have any peculiar knowledge or experience, not common to the world, which renders their opinions founded on such knowledge or experience any

aid to the court or the jury in determining the questions at issue.' "

The Colorado cases have not used the "usurpation" test as a basis for deciding admissibility of this type of testimony. See *Melville, Manual of Criminal Evidence, 2nd Edition,* p. 158, etc.

In *Cliff v. People,* 84 Colo. 254, 269 Pac. 907, the prior decisions are fully reviewed and some earlier decisions which appeared to have been based upon the proposition that the witness had testified to the ultimate facts were distinguished. The Court per Justice Butler there quoted from *Meeker v. Fairfield,* 25 Colo. App. 187, 136 Pac. 471, which declared the rule that it is error to allow a witness to testify to the existence or non-existence of ultimate facts "unless such a witness is testifying as a qualified expert or his testimony involves a description or estimate of magnitude, size, dimension, velocity, value, etc. * * * " The Court (in the *Cliff* case) then summarized previous decisions as follows:

"We have held it proper to ask an expert witness 'whether the road was safe or faulty at that place for the purposes for which it was then being used.' (*Colorado Mid. Ry. Co. v. O'Brien,* 16 Colo. 219, 27 Pac. 701), and to permit an expert witness to give his opinion in regard to the condition of an elevator, 'with reference to its being a safe or unsafe appliance for the purposes for which it was intended.' (*McGonigle v. Kane,* 20 Colo. 292, 38 Pac. 367). In *Wilson v. Harnette,* 32 Colo. 172, 75 Pac. 395, it was held proper to admit the opinion of an expert witness as to whether a discovery vein on a mining claim 'is such a lead as a reasonably prudent person would be justified in following, with an expenditure of time and money, with the hope of finding gold in paying quantities,' although the validity of the location depended upon the finding of the jury on that every question. Lindley on Mines, §336.

\* \* \*

"In overruling the objection and in denying the mo-

tion, the trial court committed no error. *Brown v. First National Bank,* 49 Colo. 393, 113 Pac. 483; *LeMaster v. People,* 54 Colo. 416, 131 Pac. 269."

In *National Fuel Co. v. McNulty,* supra, a witness was allowed to testify whether an entry into a mine was a safe place to work. The Court here quoted with approval from *U. S. Smelting Co. v. Parry,* 166 Fed. 407, 92 C.C.A. 159, 161. This case commented on the "usurp the province of the jury test" as follows:

" * * * But such a statement is not to be taken literally. It but reflects the general rule, which is subject to important qualifications, and never was intended to close any reasonable avenue to the truth in the investigation of questions of fact. Besides, the tendency of modern decisions is not only to give as wide a scope as is reasonably possible to the investigation of such questions, but also to accord to the trial judge a certain discretion in determining what testimony has a tendency to establish the ultimate facts; and to disturb his decisions admitting testimony of that character only when it plainly appears that the testimony had no legitimate bearing upon the questions at issue, and was calculated to prejudice the minds of the jurors. * * * The most important qualifications of the general rule before stated is that which permits a witness possessed of special training, experience, or observation, in respect of the matter under investigation, to testify to his opinion when it will tend to aid the jury in reaching a correct conclusion; the true test being, not the total dependence of the jury upon such testimony, but their inability to judge for themselves as well as is the witness. A reference to adjudicated cases will show the extent of this qualification, its application in actual practice, and the discretion accorded to the trial judge in that regard.' "

Recent decisions of this Court are *Ferguson v. Hurford,* 132 Colo. 507, 290 P. (2d) 229, and *Weng v. Schleiger,* 130 Colo. 90, 273 P. (2d) 356. In the *Ferguson* case, a patrolman testified as to the speed of a vehicle

when it plunged off the side of a mountain road and said that in his opinion the skid marks were indicative of "greatly excessive speed." In response to defendant's contention that the trial court had erred in receiving such testimony, it was stated:

" * * * Defendant challenges this officer's qualifications to testify as to the speed at which the automobile was being driven and also his qualification to testify as to a reasonable speed. We find that the objection to this officer's testimony was correctly ruled upon by the trial court and the evidence was competent and revelant (sic) for the jury's consideration and in no wise invaded the province of a jury." (Citing authorities.)

In the *Weng* case the Court held that it was error to admit testimony that the defendant was guilty of "inattention to driving." It is apparent from a reading of this opinion, however, that the decision was based on the conclusion of the court that the opinion testimony was ill founded and a mere speculation. In circumstances such as those which were presented in the *Weng* case, where it was apparent that the tendered opinion was no more than a surmise or a guess, it is understandable that the court would conclude that it lacked probative value and that it could be prejudicial.

■ The true test would seem to be whether the subject is sufficiently complex so as to be susceptible to opinion evidence, and, secondly, whether the witness is properly qualified to give his opinion. These difficult determinations are before the trial court and should not be disturbed on review unless they are shown to have been palpably erroneous rulings. It is clear that the matter cannot be determined by mechanically stating that it constitutes an invasion of the province of the jury since every conclusion is subject to this criticism. In view, however, of the fact that the jury can either reject or accept the opinion or give limited weight to it, we fail to see that reception of the evidence here constituted usurpation of the jury's province. The jury was

required to determine finally from the testimony and the cross-examination whether the opinion was entitled to any weight, and a reviewing court is in a poor position to conclude that the jury was unduly influenced by the opinion.

In the instant case these matters were decided by an experienced and capable trial judge who must have concluded that the opinion in question had probative value.

The judgment is affirmed.