536 P.2d 868 (1975)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Joe I. TORRES, Defendant-Appellant.
No. 74-268.
Colorado Court of Appeals, Div. I.
April 22, 1975.
Rehearing Denied May 13, 1975.
Certiorari Denied July 7, 1975.
*869 John P. Moore, Atty. Gen., John E. Bush, Deputy Atty. Gen., J. Stephen Phillips, Asst. Atty. Gen. Denver, for plaintiff-appellee.
Bollinger, Flick & Young, Jay E. Flick, Tuck Young, Pueblo, for defendant-appellant.
Not Selected for Official Publication.
*870 VanCISE, Judge.
The defendant, Joe I. Torres, then Sheriff of Pueblo County (the County), was indicted as co-defendant with John J. Tucci, president of the Main Oil Company (Main Oil), for theft from the County in an amount over $100 (1967 Perm.Supp., C.R. S.1963, 40-5-2) and for conspiracy to commit theft (C.R.S.1963, 40-7-35). Trial of the defendants was severed and the case as to Tucci was resolved by plea negotiation. Torres was tried in the Jefferson County District Court and, in that trial, the jury returned a verdict of guilty as to each charge. The issues in this appeal are directed to various rulings of the trial court concerning the admissibility of expert testimony and other evidence and the propriety of certain instructions given to the jury. We affirm.
The theory of the prosecution's case was that Torres authorized payment for, and signed receipts for, gasoline and automobile maintenance supplies billed but not delivered to the Pueblo County Sheriff's Department by Main Oil; that payment to Main Oil was made by the County on the basis of Torres's signature; and that Tucci paid Torres for his cooperation in the scheme. The evidence consisted mainly of records from the offices of the Pueblo County Commissioners, records and papers of Main Oil and Tucci relating to the transactions with the Sheriff's Department, oral testimony of people employed by the Sheriff's Department or by Main Oil, and expert testimony of an accountant who had examined the exhibits and who linked them to dealings between Main Oil and the Sheriff's Department and between Tucci and Torres. The Main Oil and Tucci documents were obtained pursuant to a search warrant, the propriety of which is not at issue here. Tucci was not called as a witness by either side. Torres, testifying in his own behalf, stated that the signing of vouchers was a normal everyday function in his office, that the vouchers for gasoline were not handled any differently than any other vouchers, that he never saw the documents found in Tucci's office, and that he never discussed any scheme with Tucci to defraud the County through false gasoline purchases and sales.

I.
Personal notes and memoranda of co-defendant Tucci and Main Oil petroleum product sales tickets in the handwriting of Tucci, all of which had been obtained from Tucci's desk at Main Oil, were introduced against Torres under the co-conspirator exception to the hearsay rule. By that exception, oral or written out-of-court statements made by one co-conspirator are admissible against the others on the theory that the statements of one become the statements of all if done during the course of, and in the furtherance of, the conspiracy. People v. Braly, Colo., 532 P.2d 325; see People v. Schlepp, Colo., 518 P.2d 824.
Torres contends there was no evidence, other than the hearsay documents objected to, which established a conspiracy between Tucci and Torres. Thus, he argues that the hearsay rule exception was inapplicable here and that the admission of these exhibits was reversible error. He is correct that, as a condition precedent to the receipt of these documents to prove the truth of the assertions therein, the prosecution must produce other evidence of a conspiracy, either direct or circumstantial. People v. Braly, supra; People v. Schlepp, supra. However, in this case, the requisite evidence was already in the record at the time the documents were introduced.
A Main Oil bookkeeper had already testified that, in her handling of the daily recapitulations of cash transactions and posting to charge accounts, she had noticed that the names on checks were occasionally unrelated to the cash slips accompanying the checks or to the accounts to which the payments were to be credited, and that checks with cash slips occasionally predated the transactions shown. Although all cash and cash sales slips were turned into the office at the end of each day, and not totalled or balanced until the next morning, *871 the bookkeeper had a rough idea of how much cash was received on a given day. There was less cash in the cash box on some mornings than there had been the previous nights. On some occasions, checks arriving in one day's mail as payments on account would reappear in the balancing of the cash box several days later as payments on other accounts. The bookkeeper was usually the last employee to leave at night and the first to arrive in the morning. However, Tucci lived in the Main Oil building, his apartment opened into the office, he had access to the cash box at night, and he was usually in the building when she arrived at work in the morning. This evidence supports an inference that Tucci was manipulating Main Oil's cash transactions for some purpose.
The bookkeeper also testified that the Sheriff's Department purchased its supplies from Main Oil on credit, and that, in contrast to the processing of all other Main Oil credit sales in which the delivering driver turned in the customer-signed invoices directly to the bookkeepers, Tucci, who never made deliveries, handled the Sheriff's Department invoices personally. The bookkeeper frequently saw unsigned invoices representing sales to the Sheriff's Department on Tucci's desk in his office, but when Tucci delivered these invoices to the bookkeepers, these invoices bore the signature of Torres, which signature had been identified by other witnesses. She never mailed or personally delivered invoices to Torres for his signature, nor had she ever seen Torres at the Main Oil office. The personal memoranda, the admissibility of which Torres challenges here, were in Tucci's handwriting and she had seen them in Tucci's desk.
There was also evidence that on an average of every 30 days, Main Oil refilled a 500 gallon gasoline tank which it had originally installed at the home of a deputy sheriff in Boone, Colorado, at the request of Torres. The deputy, who used this gasoline in his patrol car, had the only key to the tank outlet. He was never asked to receipt for, to keep records on, or to verify invoices relating to these gasoline deliveries.
Testimony had established that county suppliers are paid by warrants based on requisitions and vouchers signed by the department head or by the department purchasing officer, and that the Sheriff's Department had authority to select its own gasoline supplier. In evidence were several county warrants payable to and cashed by Main Oil, together with supporting requisitions and vouchers signed by Torres, including two warrants based on four alleged 800 gallon deliveries and one 700 gallon delivery to the 500 gallon tank, and others showing an aggregate of 2100 gallons allegedly delivered to that same tank in one 45 day period.
This evidence is sufficient to show the prima facie existence of a conspiracy and of Torres's participation therein, at least for the purpose of admitting evidence under the co-conspirator exception to the hearsay rule. It is not necessary to prove that co-conspirators came together and actually agreed in terms to have a common design and to pursue it by common means. If it is shown by their acts that they pursued the same object, one performing one part and the other another part, a conspiracy has been established. Smaldone v. People, 103 Colo. 498, 88 P.2d 103. An agreement need not be proved directly to establish a conspiracy. La Vielle v. People, 113 Colo. 277, 157 P.2d 621. As conspiracies are generally covert, most often they are established by circumstantial evidence. Medina v. People, 154 Colo. 4, 387 P.2d 733. Tucci's hearsay statements were properly admitted under the exception to the rule.
Torres's contention that there was no showing that the challenged documents were made during or in furtherance of the conspiracy is not well founded. Most of the entries in the documents bear dates after the July 7, 1970, date specified in the indictment for the commencement of the conspiracy, the earliest start in March and *872 continue through the rest of 1970. All clearly tie into the pendency of the conspiracy as shown by other testimony. Other evidence also showed continuation of the active conspiracy beyond the February 10, 1971, date when the documents were obtained from Tucci's office.

II.
Torres urges, as an additional ground for reversal, that the admission of the Tucci documents and of expert testimony thereon denied him his Sixth Amendment right to confront witnesses against him. We do not agree.
In resolving this issue, the admission of the Tucci documents must be distinguished from the testimony of the expert witness interpreting them. In view of the extensive cross-examination of the expert at the trial, Torres was fully afforded his right to confront this witness. The person who did not appear to testify was Tucci. His only statements are in the documents which we hold were properly admitted under the co-conspirator exception to the hearsay rule. Thus the question is whether Torres was denied his Sixth Amendment right to cross-examine Tucci.
The majority and concurring opinions in Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213, are dispositive of this issue. In Dutton, the witness, a fellow prisoner of an alleged accomplice, testified for the prosecution about a statement made to him by this accomplice, who did not himself testify at defendant's murder trial. This hearsay statement was admitted in the state court under a statute allowing evidence of a co-conspirator's statement made even after the active stage of the conspiracy. The Supreme Court affirmed the state court, and held that the admission of the statement did not violate the Sixth Amendment confrontation clause and that defendant's right of confrontation was not otherwise violated. As stated in Gallegos v. People, 175 Colo. 553, 488 P.2d 887, "`[T]he right of confrontation may not be invoked to exclude evidence otherwise admissible under well-established legitimate exceptions to the hearsay rule.'"
In reaching the conclusion in Dutton, supra, the Supreme Court noted that counsel for the defendant could have subpoenaed the alleged co-conspirator, but chose not to do so. The same could have been done here by Torres.

III.
Torres contends that the trial court improperly allowed an accountant to testify as an expert concerning his opinions and conclusions as to the meaning of the Main Oil and Tucci records and documents. The court permitted the accountant to collate and explain the meaning and interconnection of the various County, Sheriff's Department, Main Oil, and Tucci records and documents, and to give his opinion from them as to what they showed. All of the particular documents relating to the alleged theft had been admitted as exhibits, and the books of Main Oil had been produced and were available at the trial to be utilized for cross-examination if the defendant's attorneys saw fit.
Applicable here is the statement in Cliff v. People, 84 Colo. 254, 269 P. 907, with regard to the use of accounting experts in a similar case:
"The books and other records were in evidence. The witnesses segregated from the mass of entries, and placed together in a group, certain entries that, in their opinion, bear a relation to one another, and they explained such relation from an expert accountant's standpoint. The fact that the entries are of such a character as to make it difficult to understand thema situation by no means unusual when accounts are kept by or under the supervision of one who is embezzlinginstead of operating to exclude expert testimony, is all the greater reason for giving to the jury the assistance afforded by the testimony of those who possess special skill in the matter of accounts."
*873 See Dolan v. Mitchell, 179 Colo. 359, 502 P.2d 72; Bridges v. Lintz, 140 Colo. 582, 346 P.2d 571; National Fuel Co. v. McNulty, 65 Colo. 176, 177 P. 979.
Admission of expert testimony is within the sound discretion of the trial court. People v. Chavez, Colo., 511 P.2d 883; McCune v. People, 179 Colo. 262, 499 P.2d 1184; Bridges v. Lintz, supra. The credibility and weight to be given to the expert's testimony are jury questions, McCune v. People, supra, and the court properly instructed the jury in this respect. There was no abuse of discretion, and the testimony was properly admitted.

IV.
At the time the accounting witness was testifying, the prosecution offered, and the court admitted into evidence as exhibits, enlarged photographic copies of some of the exhibits which were already in evidence. Torres conceded that these were accurate reproductions of the originals. However, he objected to allowing the enlargements to be taken by the jury into the jury room during its deliberations at the conclusion of the case. He contended that these blow-ups unduly emphasized these particular exhibits.
Admitting enlargements of exhibits already in evidence is a matter within the discretion of the trial court. They may properly be received as visual aids to the jury to assist it in arriving at an understanding of the evidence. Republic National Life Insurance Co. v. Chilcoat, 368 P.2d 821 (Okl.); see Maynes v. People, 119 Colo. 149, 200 P.2d 915; Thomas v. State ex rel. Commissioners of Land Office, 197 Okl. 450, 172 P.2d 973; Sim v. Weeks, 7 Cal.App.2d 28, 45 P.2d 350; and Annot., 72 A.L.R.2d 308. Upon retiring for deliberation, the jury may take all exhibits which have been received in the case. Wilson v. People, 103 Colo. 150, 84 P.2d 463; see Crim.P. 57 and C.R.C.P. 47(m). There was no error here.

V.
Torres argues that the court erred in submitting an instruction to the jury that dealt merely with intent in general. He asserts that this instruction was inappropriate in connection with the crime of theft which includes specific intent as an essential element. However, that instruction was included with other general stock instructions and was not directed at any particular offense. The court gave another instruction dealing with the crime of theft, including the intent element, in the exact words of the theft statute. That instruction clearly spelled out the intent required to commit theft, and has been repeatedly upheld. Blincoe v. People, 178 Colo. 34, 494 P.2d 1285; Sandoval v. People, 176 Colo. 414, 490 P.2d 1298. There was no error in refusing to give defendant's tendered instruction on specific intent. People v. Gilmer, Colo., 511 P.2d 494. Also, the court gave an instruction on Torres's theory of the case, including his contention that he lacked knowledge and intent. See McCune v. People, supra.
No one of these instructions given was in conflict with or inconsistent with any other instruction. "Under the principle that the instructions in a case must be considered as a whole, the jury was properly informed as to the intent element." People v. Pool, Colo., 522 P.2d 102.
Judgment affirmed.
SILVERSTEIN, C. J., and COYTE, J., concur.