THE PEOPLE OF PUERTO RICO, Plaintiff and Appellant, *v.* JUAN CANALS, Defendant and Appellee.

No. 5630.—Argued May 8, 1935.—Decided July 1, 1935.

*R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellant.  *E. Pérez Casalduc* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

On May 8 last, a motion to dismiss this appeal, filed on April 26, 1935, came on for hearing, and at the same time a hearing was had of the appeal on its merits, which latter hearing had been set for April 17, 1935.  Both parties appeared by counsel and presented oral argument.

The defendant in his motion to dismiss maintains that the appeal does not lie, arguing that the order appealed from is not appealable for the reason that the information was not thereby dismissed.

After the information was filed, defendant demurred upon the grounds that the facts therein alleged did not constitute a public offense; that he was therein charged with more than one offense; and that the information was not drawn

.in conformity with sections 71 and 75 of the Code of Criminal Procedure.

In passing upon the demurrer, the district court held that an offense of embezzlement was charged in the first paragraph of the information; that such an offense was not charged in the second paragraph, but that such paragraph might perhaps be sufficient to charge an offense of violation of section 17 of Act No. 18 of 1923 (Session Laws (2), p. 82), regulating banks and banking in Puerto Rico, and that in any event the information was defective in charging more than one offense. The court granted the district attorney five days in which "to file a new, amended information not inconsistent with this order."

What is the scope of that order? Since the district attorney elected not to amend, insisting upon his information in the form in which it was presented, the order has the effect of a final judgment in accordance with section 157 of the Code of Criminal Procedure, which provides that: "If the demurrer is allowed, the judgment is final upon the information demurred to . . .," as a result of which The People has a right to appeal under the express provisions of section 348 of the same Code, as follows: "An appeal may be taken by The People . . . 2. From a judgment for the defendant on a demurrer to the information . . ."

As a consequence of the definite provision of section 157 above quoted, formal entry of the judgment is not in criminal cases necessary as in civil proceedings.

From a search of the authorities, we have found the case of *People* v. *Lee,* 107 Cal. 477, 40 Pac. 754, which in our opinion supports the conclusion that we have just reached from a study of the facts and the law. In that case the Supreme Court of California, construing a statute similar to ours, said:

"Appeal by the people from the order sustaining a demurrer to the indictment, and directing the submission of the cause to another grand jury.

"A motion to dismiss the appeal is made by the respondent, and this motion first invites consideration.

"Respondent contends that, the court having directed the submission of the matter to another grand jury, in the belief that the defect found in the indictment was curable (Pen. Code, sec. 1008), the right of the people to appeal is thereby cut off. The authority relied upon is the case of *People* v. *Wooster*, 16 Cal. 435. But the case of the *People* v. *Wooster, supra,* is radically dissimilar from the case at bar, as will become patent when it is noted that in the former case the district attorney took no exception to the ruling of the court sustaining the demurrer, while in the case at bar he did. (Pen. Code, sec. 1172.) In the Wooster case the district attorney moved for and obtained an order submitting the cause to another grand jury; in the present case he asked for no such order, and excepted to the one made by the court of its own motion. In *People* v. *Wooster, supra,* the court said: 'The failure to except and the taking of the order must be considered an acquiescence in the judgment and a waiver of a right of appeal.' The circumstances above set forth clearly indicate in this case the absence of waiver and the inapplicability of the decision.

"But, aside from this, we hold that the right of the people to appeal cannot be lost by an order of the court made of its own volition directing a submission to another grand jury. The right of appeal is guaranteed to the people by section 1238 of the Penal Code, and it is an important right. Where the district attorney admits the defect in his pleading he will avail himself of the opportunity offered by the order for resubmission and decline to appeal. But in those cases where he is satisfied with the form of the indictment, or where the facts will not permit another and different one to be framed, he has the right, representing the people, to stand upon its sufficiency and have the matter determined by the appellate court. If, by its order to submit the cause anew, the trial court could deprive him of this right, it must result that he would be compelled to come again into court with the same form of indictment, which would again be overthrown, to the end that the defendant would never be tried, and the people, with the right of appeal secured to them, would never be permitted to have this court pass upon a pleading which was believed to be legally sufficient.

"The motion to dismiss is therefore denied."

The motion to dismiss must therefore be denied. Let us now consider the appeal on its merits.

The information in question reads as follows:

"The district attorney files this information against Juan Canals for an offense of embezzlement (felony) committed in the following manner:

"The aforesaid defendant, Juan Canals, during the period included between January 19 and December 22 of the year 1931, and in Arecibo, P. R., which forms part of the judicial district of the same name, while occupying the office of director cashier of the Arecibo Branch of the Banco Territorial y Agrícola de Puerto Rico—which is a banking corporation organized in accordance with the laws of Puerto Rico, with a principal office located in San Juan, P. R.—and being, as such director cashier, manager of said branch and depositary and in charge of all properties, securities, documents, books of account and money belonging thereto, intrusted to his custody, unlawfully, wilfully, maliciously, and fraudulently, without the knowledge or consent of his principal office, abstracted and used for his own use and benefit and for purposes other than the proper and legitimate discharge of his office as such director cashier, the sum of $1,184.57, which he withdrew from the funds in his custody and appropriated to himself, making it appear, by means of simulation and false entries on the books of account of the savings department of the branch under his charge, that the said sum had been withdrawn on May 4, 1931, by Pablo López from his savings account (passbook No. 2313), which was untrue and which defendant did without the knowledge or consent of the aforesaid Pablo López, to whom the Banco Territorial y Agrícola de Puerto Rico was obliged to credit again the aforesaid sum of $1,184.57 in his savings account on February 8, 1932.

"The district attorney further shows that the defendant herein, Juan Canals, acting at all times in his capacity as director cashier of the Arecibo Branch of the Banco Territorial y Agrícola de Puerto Rico, during the months of September, October, November, and December, 1931, unlawfully, wilfully, maliciously, and fraudulently, taking advantage of the powers conferred upon him and of the confidence reposed in him by his employer, the Banco Territorial y Agrícola de Puerto Rico—from the principal office of which the defendant Juan Canals as director cashier of the Arecibo branch, had express and conclusive instructions not to authorize overdrafts in current accounts excepting 'only for limited amounts and very occasionally, such overdrafts to be covered within the shortest possible space of time by the depositor,' and to render to such principal office, daily, a detailed

report of all overdrafts in current account in the branch under his charge and the amount of each—abstracted and used for purposes other than the proper and legitimate discharge of his duty as such director cashier the sum of $8,282.83 from the funds intrusted to his charge, which said defendant did by authorizing and permitting the payment of checks drawn upon the current account of J. B. Rodríguez of Isabela, P. R., with the Arecibo Branch of the Banco Territorial y Agrícola de Puerto Rico, without there being in such account any funds whatsoever, which caused an overdraft (authorized by the director cashier, Juan Canals, defendant herein) for the aforesaid sum of $8,282.83 in the aforesaid current account of J. B. Rodríguez of Isabela, P. R., which overdraft defendant concealed at all times from the bank inspectors and at no time included in his daily report of overdrafts in current accounts to his principal office, according to the order to that effect which he had, hereinbefore referred to.

"The district attorney further shows that the sum of $9,467.40, being the total of the item of $1,184.57 referred to in the first part of this information and of the item of $8,282.83 referred to in the other part of this information, that is, in the paragraph just preceding, was reimbursed to the Banco Territorial y Agrícola de Puerto Rico by draft in favor of said bank, dated August 25, 1932, bearing number 2182 and collected by said bank on September 7, 1932, drawn by The Fidelity and Deposit Company of Maryland— a corporation organized in accordance with the laws of the State of Maryland, U.S.A., duly registered and authorized to do a surety business in Puerto Rico, and which, by policy No. 3029 (Bond No. 2434227) in favor of Banco Territorial y Agrícola de Puerto Rico, executed on November 14, 1930, had as surety for defendant herein, Juan Canals, undertaken to pay to said banking corporation, as employer, up to the sum of $15,000 as indemnity for ''such pecuniary loss as the employer shall sustain of money or other personal property (including that for which the Employer is responsible) through the Fraud, Dishonesty, Forgery, Theft, Embezzlement, Wrongful Abstraction, Misapplication or Misappropriation or any other Dishonest or Criminal Act or Omission' which might be committed by the defendant Juan Canals in the discharge of his aforementioned office of director cashier of the Arecibo branch, the aforesaid corporation, The Fidelity & Deposit Company of Maryland (whose lawful and authorized agent in Puerto Rico is Mr. Herman L. Cochran, with an office in San Juan, P. R.) being thereby defrauded of the aforesaid

sum of $9,467.40, in consequence of the unlawful and fraudulent actions of the defendant, Juan Canals.''

The first paragraph clearly charges defendant with the commission of an offense of embezzlement. As to that there is no question. Does the second paragraph also charge such an offense? Let us examine it.

Title XVII of our Penal Code is entitled ''Of Crimes Against Property.'' Chapter VI thereof is entitled ''Embezzlement,'' and commences by defining embezzlement in section 445 as ''the fraudulent appropriation of property by a person to whom it has been intrusted.''

Section 446 immediately following provides that ''every officer of Puerto Rico, . . . and every officer, director, trustee, clerk, servant, attorney, or agent of any association, society, or corporation (public or private), who fraudulently appropriates to any use or purpose not in the due and lawful execution of his trust, . . . is guilty of embezzlement.''

Sections 447 to 450 go on to set out the other ways in which the offense may be committed, and sections 451 to 455 set forth the procedure with respect thereto.

In the case of *People* v. *Calderón,* 18 P.R.R. 568, 571, this court said:

''In order to consider that the crime of embezzlement has been committed, it is necessary to establish the existence of the following elements: (1) A definite property constituting the *corpus delicti;* (2) that such property was entrusted to another person in some one of the forms specified in sections 446 to 450 of the Penal Code; and (3) that such other person fraudulently appropriated the property.''

As to the concurrence of the two first elements there is no question; it is as to the third, as to whether or not there was an appropriation by the defendant of the funds intrusted to him by the bank, that a question arises:

In summarizing the decisions, it is said in Corpus Juris:

''To constitute a conversion so as to make out a case of embezzlement, the owner must be deprived of his property or money by an adverse using or holding; * * * The means by which the fraudu-

lent convers on is accomplished are immaterial. It may be effected by any exercise of the right of ownership inconsistent with the owner's rights, and with the nature and purposes of the trust. To constitute a conversion of money or property so as to make out a case of embezzlement, accused need not appropriate the property to his own use, but is guilty if he fraudulently appropriates it to the use of another.'' 20 C. J. 426, 427.

As may be seen, under the circumstances set out in the information, although it must be admitted that this is an extreme case, it might be held perhaps that the act with which the defendant is charged of disposing of funds of the bank intrusted to his custody in the way in which he did, constitutes an appropriation thereof within the spirit of section 446 of the Penal Code. It is not necessary, however, for us to pass upon this point, since appellant maintains that the information is based on section 17 of Act No. 18 of 1923, regulating banks and banking in Puerto Rico, which reads as follows:

''Sec. 17.—That every president, director, officer, cashier, clerk, employee or agent of any bank or foreign bank who embezzles, abstracts, or wilfully misapplies any of the moneys, funds or credits of the bank or existing therein, or who, without being duly authorized, issues, or draws any certificate of deposit, draws any order or bill of exchange, makes any acceptance, assigns any note, bond draft, bill of exchange, mortgage, judgment or decree, or who makes any false entry in any book, report or statement of the bank or foreign bank, with intent, in any of such cases, to injure or defraud the bank or any other company, body politic or corporate, or any individual person, or to deceive any officer of the bank, or any agent appointed to examine the affairs of any such bank or foreign bank; and every person who with like intent aids or abets any officer, agent, or clerk in any violation of this section, shall be deemed guilty of a felony, and shall be imprisoned for not less than one year nor more than ten years.''

As a matter of fact, this is the law in force, and the question here raised must be considered and decided in the light of those provisions.

In the case of *Cliff* v. *People,* (Colo.) 269 Pac. 907, 909, it was said:

"It is claimed that the prosecution was under section 6734 of the Compiled Laws (act of 1907) ; that that section, so far as it relates to bankers, was impliedly repealed by the act of 1913 (C. L. sec. 2675). This objection was made first by a motion to quash the information, and was renewed several times during and after the trial. The act of 1907 relates to the crime of larceny by embezzlement. It is a general statute on that subject. The act of 1913 is a special statute relating only to banks and banking. It makes embezzlement by a banker a felony regardless of the amount embezzled (C. L. sec. 2740) ; whereas, under the act of 1907, whether it is a felony or a misdemeanor depends upon the amount embezzled (C. L. secs. 6734, 6719, 6738). The maximum penalty under the act of 1913 is confinement in the penitentiary for 20 years and a fine of $2,000 (C. L. sec. 2740) ; whereas, under the act of 1907, the maximum penalty that can be imposed is confinement in the penitentiary for 10 years. It clearly was the intention of the Legislature to withdraw from the operation of the earlier and general act the crime of embezzlement by bankers and place it in a special class by itself. This being true, it follows that, so far as bankers are concerned, the act of 1913 supersedes and impliedly repeals the act of 1907."

The acts with which defendant is charged in the first paragraph of the information constitute the offense of embezzlement under the Penal Code, as well as under the Banking Law. As to that there is no question, but it is doubtful whether the acts with which he is charged in the second paragraph of the information would amount to such an offense under either statute, since what the Banking Law calls embezzlement must be understood as requiring the same elements as are required to constitute the offense under the Penal Code.

However, putting aside the question of embezzlement and admitting that the characterization of the offense as embezzlement in the information is erroneous, we believe that there is no doubt that the acts charged not only in the first but also in the second paragraph of the information constitute a wilful misapplication of the funds of the Banco Territorial

y Agrícola intrusted to defendant as director cashier of the Arecibo branch of such bank, provided for and punished by section 17 of the Banking Law.

██ Furthermore, since what is important is not the name which may be given to an offense, but the acts with which defendant is charged (*People* v. *Rodríguez,* 46 P.R.R. 525), we shall go upon the ground that what defendant is really charged with is the felonious offense referred to in the above quoted section 17 of the Banking Law, for the purpose of considering and deciding the question of duplicity which has been raised.

It is well known that the Code of Criminal Procedure provides in section 77 that an information must charge but one offense, but it is also provided that the same offense may be set forth in different forms under different counts, and, when the offense is committed by the use of different means, the means may be alleged in the alternative in the same count.

It is true that the information charges defendant with two acts, but it is also true that the two acts with which he is charged, constituting wilful misapplication of funds intrusted to him, amount to but a single offense.

An offense is involved which, although not continuous in nature since each wilful misapplication constitutes a violation which might be punished as an offense, may in our opinion be prosecuted when committed in series, as in the case of embezzlement. *People* v. *Pérez,* 47 P.R.R. 724, 742.

The defendant suffers no prejudice. He has been informed since the beginning of the acts with which he is charged, and he may thus prepare himself for his defense better than if such acts had been later brought to light at the trial as evidence for the sole purpose of showing his criminal intent, something which is permissible. *People* v. *Juarbe,* 43 P.R.R. 428; *People* v. *Pérez,* 47 P.R.R. 724, 742.

It is clear that although defendant is charged with all the wilful misapplications, it is unnecessary to prove all of them to secure a conviction, but once they have been charged,

it is likewise clear that if the defendant should be discharged, he could not again be prosecuted for any of them.

Consequently, since the district attorney has not asked for more than one conviction, and since he could not secure more than one, it is possible to reach the conclusion that defendant is charged with only one offense, that of wilful misapplication of bank funds intrusted to his custody, with fraudulent intent, and by means of different acts set forth in the information, and which taken together constitute the criminal act.

The appeal must therefore be allowed, and the order appealed from reversed and substituted by another overruling the demurrer, with leave to the district attorney to amend the information by substituting for the designation embezzlement given to the offense, that of a violation of section 17 of Act No. 18 of 1923 regulating banks and banking in Puerto Rico.