532 P.2d 975 (1974)
Lurenda KERBY, Plaintiff-Appellee,
v.
The FLAMINGO CLUB, INC., a Colorado Corporation, Defendant-Appellant.
No. 73-391.
Colorado Court of Appeals, Div. II.
December 17, 1974.
Rehearing Denied January 14, 1975.
Certiorari Denied March 31, 1975.
*976 Feder & Morris, P.C., Harold A. Feder, Denver, for plaintiff-appellee.
Gavend, Sullivan & Bryans, Kerry L. Sullivan, David M. Bryans, Denver, for defendant-appellant.
Selected for Official Publication.
RULAND, Judge.
Defendant, The Flamingo Club, Inc., appeals from a judgment entered upon a jury verdict for $250,000 in a wrongful death action. We affirm.
Viewing the admissible evidence in a light most favorable to the successful party, as we must, see J & K Construction Co. v. Molton, 154 Colo. 214, 390 P.2d 68, the record reflects the following. On January 31, 1971, Thomas Kerby was 34 years of age and married to the plaintiff. The couple had two children, aged five years and 14 months. Kerby was in good health and employed full-time as an insurance salesman and part-time as a Yellow Cab driver on weekends. In addition to his *977 employment, Kerby was enrolled in college to obtain a master's degree in business.
At approximately 2 a.m. on January 31, 1971, and while operating a Yellow Cab, Kerby was summoned to The Flamingo Club in Commerce City to pick up passengers. The Flamingo Club was licensed to sell alcohol to persons on the premises and is referred to hereafter as the "tavern." Kerby pulled to a stop in the tavern parking lot near the main entrance, and a man and a woman entered the cab. Thereupon Teddy Crespin, a patron at the club, attempted to pull the woman passenger from the cab. Kerby interceded on her behalf, a fight ensued, and Kerby was attacked by four or more patrons of the tavern. In the process, Kerby was knocked to the ground and then kicked, receiving fatal injuries. Two of the assailants were convicted of first degree murder, and Crespin pled guilty to voluntary manslaughter.
As of the date of this incident, Jerry Hampton was the manager of the tavern. He had employed Robert Bernal as a "bouncer." Both men were working at the tavern at the time of Kerby's death.
The bouncer's duties consisted of checking identifications of patrons, waiting tables, and removing unruly patrons. However, when the club became extremely busy, the bouncer was not required to check identifications. All employees of the club were allowed to drink while working on the premises.
During the year prior to this incident, a number of fights, arguments, and disturbances had occurred between patrons and between patrons and the manager on or near the tavern premises, resulting in numerous contacts from the Commerce City Police Department. The manager was aware that some customers had been injured in conjunction with these altercations, and the manager had broken up at least one fight on the parking lot. Nevertheless, the bouncer did not consider his duties to include any supervision of the parking lot for any purpose except to recover property of the tavern taken from the premises by patrons.
Crespin was 19 years of age on the date of the murder. Crespin consumed a number of beers while at the tavern, commencing at approximately 8 p.m. in the evening. He had devoted most of his time during the evening trying to convince the woman for whom Kerby's cab was subsequently called that she should "go home with him."
One of the other assailants had been drinking beer at another tavern in the afternoon on the date in question. Later he passed out at still another tavern. Eventually he wound up at The Flamingo Club with the second assailant and was served by the bouncer, even though he was intoxicated and staggering. The second assailant was a minor and was also intoxicated to some degree. The bouncer was purchasing beer which was consumed by both of these assailants. Still another patron who was drinking with the convicted assailants was removed by the bouncer twice during the evening for his behavior. However, none of Kerby's known assailants misbehaved while in the tavern.
After everyone had left the tavern at closing time, the doors were locked, the outside sign was turned off, and the curtains on the window facing the parking lot were closed. The parking lot was then semi-dark. Nevertheless, if people were talking in the parking lot in a loud manner, they could be heard inside the tavern. The assault on Kerby was accompanied by loud shouting and other noises, and the altercation consumed 15 or 20 minutes. Neither Hampton nor the bouncer (who were both present in the tavern) went to the parking lot until contacted inside the tavern and specifically informed of the fight. At that time, Kerby was lying on the ground, and the fight had ended. He died thereafter from the injuries received.
Kerby's widow filed the present action, asserting three separate claims for relief. The tavern answered denying liability and affirmatively alleged that decedent's death *978 resulted from negligence of a party over whom the tavern had no control and assumption of the risk by the decedent.
In the first claim, the widow alleged that the tavern was liable under a theory of landowner's premises liability for general negligence. Following presentation of evidence by the widow, a directed verdict for defendant was entered on all claims except the first. The tavern elected not to present evidence in its defense, and the case was submitted to the jury. The jury then returned a verdict for the widow.

I. Liability
Plaintiff's position in the trial court and here is, in effect, that the evidence established the tavern's liability under her first claim upon three different theories of recovery: (1) That the tavern, based upon knowledge of prior fights and disturbances, was responsible for supplying an off-duty officer or other similarly qualified person to supervise the parking lot at closing; (2) that the manager and bouncer had a responsibility to intervene in the fight when they knew or should have known that the fight was in progress; and (3) that the tavern furnished alcohol to two of the assailants who were minors and to all of the assailants when they were intoxicated and that such intoxication was a proximate cause of the death of Thomas Kerby.
In this appeal, the tavern first asserts that the trial court erred in not granting its motion for directed verdict as to the first claim. In support of this contention, the tavern contends that there was no evidence that it knew or should have known that Crespin and the assailants were violent men or that they would engage decedent in the fatal altercation after the tavern closed, and that, therefore, it cannot be held liable. We disagree.
Liability of business proprietors has recently been extended by eliminating the requirement of notice, either actual or constructive, of a specific condition, "when the operating methods of a proprietor are such that dangerous conditions are continuous or easily foreseeable . . . ." Jasko v. F. W. Woolworth Co., 177 Colo. 418, 494 P.2d 839. The duty of the business proprietor extends to the decedent, although not a patron, since the status of the injured party on the premises is not dispositive of his rights. Mile High Fence Co. v. Radovich, 175 Colo. 537, 489 P.2d 308. Here the tavern manager conceded that fights occurred on the premises, including the parking lot, and at least nine police contacts were necessitated by fights and disturbances on the tavern premises in the year preceding the assault on Thomas Kerby. Hence, the jury could find, under these circumstances, that the tavern was negligent in failing to take affirmative steps to protect persons lawfully on the premises from injury resulting from fights and disturbances, both during operating hours and for a reasonable time after closing.
Plaintiff's second theory of recovery is supported by the evidence. The duty to exercise reasonable care for the protection of persons lawfully on the premises extends not only to those inside the tavern but to persons present on the tavern parking lot. See Schneider v. Pinnt, 173 Colo. 232, 476 P.2d 1004. The duty includes the responsibility to intervene in any altercation to protect persons lawfully on the premises once the tavern employees know or should know that an altercation is in progress. See Vigil v. Pine, 176 Colo. 384, 490 P.2d 934.
Here there is evidence from which the jury could properly determine that: The fight took place over a span of 15 to 20 minutes; the fight was accompanied by loud shouting and noise; the manager and bouncer of the tavern were aware that fights frequently took place among its patrons, both inside the bar and on the parking lot; while inside the tavern, both the manager and the bouncer overheard the shouting and noises accompanying the fight outside the tavern; and, the manager and bouncer took no steps to investigate the disturbance and intervene in order to assist the decedent until they were specifically *979 informed of the assault. Under such circumstances, the tavern is liable for negligence.
The plaintiff's final theory of recovery is likewise supported by case law and the evidence in this case. A tavern owner is liable to one who is injured by the intoxication of his patrons if the tavern owner furnishes alcohol to those patrons when they are in such a condition as to be deprived of their willpower or lack responsibility for their behavior. Hull v. Rund, 150 Colo. 425, 374 P.2d 351. Here the record reflects that two of Kerby's assailants were minors, that they were furnished alcohol while on the tavern premises, that one of the assailants was "drunk," one was "high," and one was "pretty loaded." On the basis of this evidence and the circumstances of the altercation itself, the jury could find that one or more of the assailants were intoxicated to the point that they were not responsible for their behavior and that such intoxication was a proximate cause of the fatal injuries.

II. Evidence
The tavern asserts that the trial court erred in allowing Detective Sergeant Baldwin to voice an opinion, over objection, that the presence of an off-duty officer on the premises of the tavern on the date in question would have prevented the death of Thomas Kerby. We disagree.
Prior to expressing an opinion, the detective testified concerning his training and background in law enforcement and crime prevention and that he was in charge of the investigation conducted in the death of Thomas Kerby. The tavern stipulated to his qualifications as an expert. In the course of this testimony, the detective was asked whether he had occasion to determine the effect of the presence of off-duty officers at liquor establishments. The detective responded in the affirmative and indicated that he was acquainted with numerous situations where off-duty officers were present at various "functions" in Commerce City.
On cross-examination, the detective conceded that in his answer he assumed that the off-duty officer would have been in a position to respond to the scene of the fight, that he would have had communication equipment available to call for help if that were necessary, and that the officer would have been armed and would have been able to produce this weapon with the result that the assault would have been terminated. The tavern therefore contends that the opinion was based on facts not in evidence, and, as such, was mere conjecture and should have been excluded. We disagree.
While there is no statutory requirement that a tavern employ an off-duty officer, Cubbage v. Leep, 137 Colo. 286, 323 P.2d 1109, for reasons given above, plaintiff presented sufficient evidence to establish a prima facie case that the tavern was negligent in not having additional personnel properly to protect persons from injury due to fights and disturbances, and the detective's opinion is merely that the employment of an off-duty officer would have assisted in discharging the tavern's duty of care. The facts which were necessary to form the basis of this opinion were in evidence, namely, that the tavern sold alcoholic beverages to a class of patrons known on numerous occasions to have engaged in fights and disturbances (sometimes resulting in injuries), and that the manager and bouncer were present at closing but did not supervise the exit of patrons in the parking lot.
It has long been established in this jurisdiction that absent clear error, the trial court's ruling on the admissibility of expert testimony is conclusive. See, e.g., Freeman v. Gentry Builders, Ltd., Colo., 522 P. 2d 739. Bridges v. Lintz, 140 Colo. 582, 346 P.2d 571, supports the ruling of the trial court in this case.
In Bridges the officer who investigated an automobile accident was qualified as an expert and was permitted to give an opinion not only that defendant was exceeding a safe speed but that this speed coupled with the icy condition of the highway *980 caused the accident. As in the present case, the officer's opinion in Bridges assumes certain facts, especially with regard to the skill and prior experience of the driver in operating a vehicle under icy highway conditions. While the court in Bridges dealt with the "ultimate issue" objection in its opinion, we view the same analysis as applicable to the "conjecture" objection made by the tavern here:
"The true test would seem to be whether the subject is sufficiently complex so as to be susceptible to opinion evidence, and, secondly, whether the witness is properly qualified to give his opinion. These difficult determinations are before the trial court and should not be disturbed on review unless they are shown to have been palpably erroneous rulings. It is clear that the matter cannot be determined by mechanically stating that it constitutes an invasion of the province of the jury since every conclusion is subject to this criticism. In view, however, of the fact that the jury can either reject or accept the opinion or give limited weight to it, we fail to see that reception of the evidence here constituted usurpation of the jury's province. The jury was required to determine finally from the testimony and the cross-examination whether the opinion was entitled to any weight, and a reviewing court is in a poor position to conclude that the jury was unduly influenced by the opinion."
The tavern next asserts that the trial court erred in permitting plaintiff's counsel to elicit certain testimony about ownership of the tavern. Prior to trial, the parties stipulated that Norma Callbeck was the owner of all stock in the corporate tavern as of the date of the incident. Plaintiff's counsel then was allowed to establish on cross-examination that the manager was married to Norma Callbeck, that following this incident the parties were divorced, a copy of the divorce agreement was entered into evidence, and plaintiff was allowed to establish that the manager married a subsequent purchaser of the stock of the tavern. While we agree that this evidence was not relevant to any material issue, we disagree that its admission prejudiced the jury, and hence we view the admission of this evidence as harmless error. C.R.C.P. 61; see Hadden v. Gateway West Publishing Co., 130 Colo. 73, 273 P.2d 733.
We have examined the tavern's other objections to the evidence admitted in this case and find them to be without merit under the circumstances of this case.

III. Instructions
The tavern contends that the trial court erred in refusing to instruct the jury on "intervening cause," its theory being that the assault on the decedent was independent of any negligence by the tavern. We disagree.
The tavern tendered to the trial court Colorado Jury Instruction 9:26 which recites, insofar as material here:
"One's conduct is not a proximate cause of another's injuries, however, if, in order to bring about such injuries, it was necessary that his conduct combine or concur with an intervening cause which also contributed to cause the injuries, but which intervening cause would not have been reasonably foreseen by a reasonably prudent person under the same or similar circumstances."
Assuming, without deciding, that the instruction would have been proper as to two of plaintiff's theories of negligence, it would have been error to so instruct the jury relative to plaintiff's theory of negligence based on the failure of the tavern employees to intervene once they knew or should have known the assault was in progress. No attempt was made by the tavern to limit the applicability of the instruction to the other theories of recovery. Hence, we conclude it was not error for the trial court to refuse the instruction as tendered. See C.R.C.P. 51.
*981 We have examined the tavern's other assignments of error as to the jury instructions and the award of expert witness fees and find them to be without merit.
Judgment affirmed.
ENOCH and STERNBERG, JJ., concur.