**John P. LANNON, Plaintiff-Appellee,**

v.

**TACO BELL, INC., Defendant-Appellant.**

**No. 82CA0102.**

Colorado Court of Appeals, Div. I.

March 21, 1985.

Rehearings Denied May 2, 1985.

Certiorari Granted (Taco Bell) Nov. 4, 1985.

Certiorari Denied (Lannon) Nov. 4, 1985.

Fogel, Keating & Wagner, P.C., William L. Keating, Denver, for plaintiff-appellee.

Fortune & Lawritson, P.C., Jon L. Lawritson, Denver, for defendant-appellant.

PIERCE, Judge.

In this negligence action, defendant, Taco Bell, Inc., appeals a judgment entered on the jury verdict in favor of plaintiff, John P. Lannon. We reverse and remand with directions.

The facts are essentially undisputed. As Lannon, a cabdriver, approached the counter of one of defendant's restaurants, he saw a man with a gun behind the counter removing money from a floor safe. Lannon backed away bumping into a person who turned out to be a second robber. He ran to the parking lot. The man with the gun fired at him through a window, and the bullet injured Lannon.

I

The focal issue of this appeal is whether the trial court should have submitted an instruction on comparative negligence. We agree with Taco Bell that the issue of Lannon's negligence should have been submitted to the jury.

A party has a duty to refrain from acts or omissions to act which may contribute to the totality of acts which cause injury to him. *Fay v. Kroblin Refrigerated Xpress, Inc.*, 644 P.2d 68 (Colo.App. 1981); *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99, 248 N.Y. 339 (Andrews, J. dissenting 1928); Restatement (Second) of Torts § 466 (1965). Here, Lannon had previously received training regarding actions to be taken during robberies. He had been told to cooperate, make no sudden moves, and refrain from arguing with perpetrators. Despite this warning, when he perceived a robbery in progress, he turned and ran. In so doing, Lannon apparently startled the robber who fired at him, striking him in the hand.

Perhaps he acted rashly in drawing the robber's attention to himself and gave the impression that he was going for the police. Perhaps he should have quietly walked away instead of running. In any

event, the situation is not one in which reasonable minds can draw but one inference as to whether he breached his duty to avoid a situation that could cause him injury. Hence, the issue of Lannon's negligence should have been presented to the jury for its consideration. *See Transamerica Insurance Co. v. Pueblo Gas & Fuel Co.*, 33 Colo.App. 92, 519 P.2d 1201 (1973).

On retrial, an instruction on comparative negligence should be given in addition to appropriate instructions on Lannon's theories of defense to the negligence allegations, including the doctrine of sudden emergency. *See Davis v. Cline*, 177 Colo. 204, 493 P.2d 362 (1972); *Tracy v. Graf*, 37 Colo.App. 323, 550 P.2d 886 (1976).

## II

Because our disposition requires a retrial, we address certain issues which may reoccur.

### A. Legal Duty

Taco Bell contends that the issue of whether it breached a duty to this plaintiff by failing to employ an armed guard should not have been submitted to the jury. We disagree.

 Before liability can be found in a negligence action, the existence of a duty of care must be determined. This is a question of law. *Metropolitan Gas Repair Service, Inc. v. Kulik*, 621 P.2d 313 (Colo.1981). Whether the law should impose a duty requires consideration of the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury or harm, and the consequences of placing the burden upon the actor. *Iverson v. Solsbery*, 641 P.2d 314 (Colo.App. 1982).

 Business proprietors do have a duty to exercise reasonable care for the protection of persons on the premises, and that duty includes taking reasonable measures to prevent or deter reasonably foreseeable acts, and to alleviate known dangerous conditions. Where injury can be foreseen, there is a duty to act so as to avoid it. *Kerby v. Flamingo Club*, 35 Colo.App. 127, 532 P.2d 975 (1974); *see Safeway Stores, Inc. v. Smith*, 658 P.2d 255 (Colo.1983).

 Whether the defendant owed a duty to the class in which the plaintiff found himself is a question of law for the court based on the foreseeable appreciable risk of harm. Whether the defendant has in fact breached that duty is a question for the jury. *Metropolitan Gas Repair Service, Inc. v. Kulik, supra; see also City of Longmont v. Swearingen*, 81 Colo. 246, 254 P. 1000 (1927).

It is implicit in this case that the trial court concluded that the evidence presented regarding the effectiveness of armed guards in other establishments in the area, the history of frequent robberies at this particular establishment and throughout the general area, and the great risk of serious injury to those present during a robbery, established a duty on the part of Taco Bell to use reasonable means to alleviate a known dangerous condition. *See City of Longmont v. Swearingen, supra.*

 Hence, the factual issue here is whether Taco Bell breached its duty to Lannon because of its failure to take reasonable steps to prevent foreseeable armed robberies on its premises and that issue was an appropriate one for jury determination. It is for the jury to decide whether a reasonably prudent defendant, under the same or similar circumstances, would have taken available precautions. If Taco Bell should have, then the duty was breached. *See Ferguson v. Gardner*, 191 Colo. 527, 554 P.2d 293 (1976); *Kerby v. Flamingo Club, supra.* The trial court was thus correct in refusing to enter a directed verdict in favor of Taco Bell.

### B. Causation

Taco Bell maintains that even if it breached a legal duty, the criminal acts of

the robbers were not foreseeable, and therefore, the chain of causation leading from its negligence to Lannon's injury was broken. The facts do not bear out this contention. The restaurant in question is located in a high crime area, and had been robbed frequently, as had other similar establishments in the area. Considerable evidence was presented as to the proper standard of care under these circumstances, and as to the precautions taken by other restaurants in the area because of this persistent problem.

Taco Bell would have us place an undue limitation on causation as an element in situations involving an intervening act. As the court stated in *Ekberg v. Greene*, 196 Colo. 494, 588 P.2d 375 (1978):

> "Where the circumstances make it likely that defendant's negligence will result in injuries to others and where this negligence is a substantial factor in causing the injuries sustained, the requirement of proximate causation is satisfied. An intervening act of a third party does not absolve the defendant from responsibility if that act is reasonably and generally foreseeable. Here the jury undoubtedly determined from the disputed evidence that the intervening act was reasonably foreseeable."

 Thus, construing the evidence in the light most favorable to the verdict, we conclude it was sufficient to create a jury question as to the foreseeability of the criminal activity which occurred and of the potential for harm to a patron. *See Kiefer Concrete, Inc. v. Hoffman*, 193 Colo. 15, 562 P.2d 745 (1977).

### III

Taco Bell also contends that the trial court erred in admitting into evidence police offense reports concerning other robberies at the restaurant in question, and that police reports are not covered by the business records exception to the hearsay rule set forth in CRE 803(6). We disagree.

 The question of whether police offense reports fall under the business records hearsay exception has not been specifically addressed in this state. However, the drafters of Fed.R.Evid. 803(6), which is identical to CRE 803(6), contemplated including police reports within the business records exception when the other requirements of the rule are met. *See* Fed.R.Evid. 803(6) (Notes of Advisory Committee); *People v. Stribel*, 199 Colo. 377, 609 P.2d 113 (1980). Thus, we hold that such offense reports are admissible in civil cases. *Rosario v. Amalgamated Ladies' Garment Cutters' Union*, 605 F.2d 1228 (2d Cir.1979).

 The circumstances here satisfy the requirements of CRE 803(6). The offense reports were kept in the regular course of police department business, and were made shortly after the robberies from information transmitted by Taco Bell's employees who were present at the robberies. Therefore, we hold that the police offense reports were properly admitted under CRE 803(6).

Furthermore, the offense reports do not indicate a lack of trustworthiness and the reports represent "factual findings" pursuant to an authorized police investigation. *Cf. Tincombe v. Colorado Construction & Supply Corp.*, 681 P.2d 533 (Colo.App. 1984). Therefore, admission of the reports was proper.

### IV

 Taco Bell also contends that even if the admission of the police reports was proper, the court, upon Taco Bell's request, should have given an instruction in the form of *CJI-Civ.2d* 11:9 (1980), explaining to the jury the purpose for which the offense reports were being admitted into evidence, and instructing the jury to consider them for no other purpose. Taco Bell has failed to show how the absence of a limiting instruction was prejudicial, C.R.C.P. 61; thus, the failure to give a limiting instruc-

tion was not reversible error. However, upon retrial, we suggest that the trial court give an appropriate limiting instruction.

The judgment is reversed and the cause is remanded with directions to retry only the negligence issues consistent with the views expressed in this opinion.

TURSI, J., concurs.

SMITH, J., concurs in part and dissents in part.

SMITH, Judge, concurring in part and dissenting in part.

Although I concur in reversal of the judgment, I dissent from the remand for new trial.

While the majority has acknowledged the rule in *Iverson v. Solsbery*, 641 P.2d 314 (Colo.App.1982) as controlling, I believe it has ignored the balancing test required by that rule in holding that Taco Bell had a duty, as a matter of law, to hire armed guards to protect its patrons from injury. In justification of its holding, the majority states that:

> "Where injury can be foreseen, there is a duty to act so as to avoid it." (citations omitted).

> "Whether the defendant owed a duty to the class in which the plaintiff found himself is a question of law for the court based upon the foreseeable, appreciable risk of harm. Whether the defendant has in fact breached that duty is a question for the jury." (citations omitted).

I have no quarrel with this statement as a general principle, but I object to its being used as the sole basis for the imposition of the specific legal requirement that Taco Bell be required to hire armed guards. In my view, *Iverson, supra,* requires that, in decreeing the specific steps required of a person to meet a duty of care, the court *must* consider the consequences and effect that imposing such specific means of fulfilling the duty would have upon society and the individual involved. These considerations cannot, because of our system of precedential law, be limited solely to the case at bar; rather, they are policy decisions with far reaching implications.

Shorn of its legalistic jargon the issue we are deciding here may be stated as follows: Should a person, under threat of becoming financially liable, be required to equip himself, or his employee with a deadly weapon and, by necessary implication be authorized to use that weapon to injure or, if necessary, to kill to protect the patrons of his establishment from the consequences of a criminal act of unknown third persons? I think not.

First, I question the efficacy of such a requirement. While the presence of armed guards may deter the entrance of armed robbers, it may likewise precipitate a confrontation involving the discharge of weapons which may, in itself, pose an even greater danger to innocent patrons.

Secondly, insofar as courts, by decision, define the duties of one citizen toward another, they determine the public policy of the society of whose government they are a part. Specifically, a rule such as the one adopted today ignores the fact that in all organized societies the responsibility for preventing crime, as well as the apprehension and punishment of criminals, is one of the prime functions of government. While the existence of "high crime" areas may indicate a lack of government effectiveness in protecting its citizens, it is not a justification for encouraging, much less requiring, private citizens to usurp this governmental function. Although an individual, or even a group of citizens, may *voluntarily* adopt measures supplementing the government's efforts in protecting their own property or lives from the activities of criminals, a society which deliberately attempts to shift this responsibility to its individual citizens blatantly denies one of the essential justifications for the existence of government.

How can we then, as arbiters of the rights and the responsibilities of citizens toward each other, engage in the hypocrisy

of imposing a legal duty on one citizen to take up arms in protecting others from the criminal acts of unknown persons, and indeed, make him liable in damages for injuries that may be suffered by third parties as a result of his failure to do so? Even government, for which this is a prime duty, has never accepted the obligation to recompense those injured because of its failure to prevent crime.

In my opinion, there is a world of difference between requiring a business proprietor to maintain the premises over which he has control free of defects or conditions, such as a slippery floor, which might cause injury to his patrons as in *Safeway Stores Inc. v. Smith*, (cited by the majority), and requiring him to defend, with deadly weapons if necessary, his patrons from the results of acts perpetrated by unknown persons who intrude, uninvited, for the purpose of committing a crime. Even the duty of a bar owner to attempt to prevent altercations between unruly patrons, as in the case of *Kerby v. Flamingo Club*, (cited by the majority), falls far short of the rule announced today. In all such cases where a duty has been imposed, as a matter of law, the person charged had virtually absolute control over the dangerous condition and the ability to diminish or eliminate it. Here, Taco Bell not only had no control over the danger, but was itself the intended victim of the criminal act.

Furthermore, there is yet another distinction between these cases and the one at bar which has an even more frightening significance. In all of the prior similar cases the specific duty imposed unquestionably would have alleviated or reduced the risk of injury. Here, in contrast, the duty imposed by the majority specifically mandates the introduction of deadly weapons onto defendant's premises, and, by necessary implication, their use to kill or wound. I cannot believe that a duty which escalates the potential for deadly injury has any place in the law.

As sad as it may be that plaintiff, an innocent bystander to a crime was injured does not, in my opinion, justify the imposition of a legal duty on the restaurant to recompense him.

For these reasons I would hold that Taco Bell had no duty, as a matter of law, to hire armed guards to protect its customers from the consequences of acts of armed robbers who may invade its premises. Absent such duty, the motion for directed verdict should have been granted. Thus, although I, like the majority, would reverse the judgment, I would remand for entry of a judgment dismissing plaintiff's complaint.