Daniel W. SHEWMAKE and Alex T. Warmath, Plaintiffs,

v.

BADGER OIL CORPORATION, Defendant.

Civ. A. No. 86–K–1355.

United States District Court, D. Colorado.

Feb. 27, 1987.

George W. Mueller and Robert T. Cosgrove, Denver, Colo., for plaintiffs.

Richard K. Rufner, Denver, Colo., for defendant.

## MEMORANDUM OPINION
## AND ORDER

KANE, District Judge.

This diversity action is before me on defendant's motion for summary judgment. Plaintiffs claim in tort and as third party beneficiaries of an assigned oil lease allegedly breached by defendant.

Plaintiffs Shewmake and Warmath were geologists and employees of Fuel Explora-

tion, Inc., also known as "Fuelex". In May of 1981, during the period of plaintiffs' employment, Fuelex entered into an oil and gas lease with landowners Joseph and Maxine Fazzio. The lease provided if no well was commenced on a specific acreage of Fazzio property in Utah within three years, the lease would terminate unless 1) the lessee paid $16,000 to renew the lease, or 2) the acreage subject to the lease was pooled into a unit containing a producing well. Plaintiffs allege that, as corporate employees, Fuelex granted them overriding royalty interests in that lease.

Plaintiffs left Fuelex's employ in December, 1981. One month later, in January of 1982, the corporation assigned its interests under the lease to defendant Badger Oil and reserved all overriding royalty interests in the lease. The assigned interests, of which Badger was concededly cognizant, attached to all renewals, extensions, or leases taken in lieu of the original lease.

In May of 1983, Badger produced oil from a test well on the Utah property. Almost immediately thereafter, Badger precluded the filing of a pooling agreement, and thus the renewal of the Fuelex lease, by paying the Fazzios to execute a ratification and rental division order. Badger predated the order to coincide with the initial oil production from the test well.

Badger alleges Fuelex's leasehold expired soon after the executed order, in June of 1983. Later that same month, Badger entered into a lease agreement directly with the Fazzios for the same property that had been under the original Fuelex lease.

In November of 1983, Fuelex filed suit in a Colorado state court seeking compensation for the overriding royalty interests due under the original lease and assignment. *Fuel Exploration, Inc. v. Badger Oil Co.,* Case No. 83CV10460. By stipulation of the parties, that suit was dismissed with prejudice in May of 1985. In a trial data certificate filed by Badger concerning the state court stipulation, Badger stated:

> the net revenue interest of Fuelex stated in the Stipulation and Cross-Conveyance was intended to cover claims of former

employees of Fuelex ... to overriding royalty interests in Lease No. 1 ...

As the net revenue interest discussed in the certificate was the subject of the state court litigation, so Fuelex's claims on such revenue interest became bound by dismissal of the suit.

Plaintiffs here seek to raise the same issues decided between the corporations in the state court action in the guise of tort and contract claims. Although both parties urge me to address construction and interpretation of the original oil lease and subsequent assignment, I find that plaintiffs are not parties properly before this court, nor have plaintiffs stated a claim for relief. Therefore, I do not reach the merits of claims arising under the assigned lease.

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining the existence of any genuine issue of material fact, the record is construed in the light most favorable to the party opposing the motion. *Otteson v. United States,* 622 F.2d 516, 519 (10th Cir.1980). However, the adverse party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In *Hickman v. Thomas C. Thompson Co.,* 592 F.Supp. 1282, 1286 (D.Colo. 1984), I held that federal courts sitting in diversity jurisdiction decide first which state's law applies to a particular problem by applying the conflict of law rules of the forum in which it sits. Under Colorado conflict of law rules, I must apply the law of the state with the most significant contacts to the underlying tort. *Id.* Although the actual leased property the parties are concerned with here is located in Utah, specific location has little to do with the financial injuries plaintiffs claim arose as a

result of Badger's corporate actions. Instead, I find that since 1) plaintiffs are residents of Colorado, 2) Badger Oil is qualified to do, and is doing business in, Colorado, 3) the subsequent state court action between the corporations occurred in Colorado, and 4) the assignment of the lease was acknowledged and notarized in Colorado, Colorado law applies to this action.

Plaintiffs attempt to claim in their memo in opposition to Badger's motion both that they are and are not third party beneficiaries to the agreement between Fuelex and Badger. It is unnecessary to make this determination for them; under either analysis of plaintiffs' legal position in relation to the two corporations, their arguments for relief are unavailing and the summary judgment motion must be granted.

Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). In *Winslow v. Bauer*, 585 F.Supp. 1048, 1053–54 (D.Colo. 1984), I wrote: "The Winslows not only could have but should have raised and litigated the transcript issues in state court. The failure to do so is an absolute barrier to this suit." *See also, Pomeroy v. Waitkus*, 183 Colo. 344, 517 P.2d 396, 399 (1973) (res judicata "bars relitigation not only of all issues actually decided, but of all issues that might have been decided ...").

■ This doctrine is fully applicable to the case at bar. Plaintiffs do not contest the finality of judgment imposed by the stipulation executed in 1985 in Case No. 83CV10460. If plaintiffs maintain they were third party beneficiaries to the lease assignment between the corporations, then they must be considered in privity with Fuelex during the state litigation. This is true regardless of whether they were employees of the corporation at the time of the action or not—what controls is the fact they were employees of Fuelex at the time the original lease with the Fazzios arose.

It matters little whether plaintiffs "authorized" Fuelex to seek recovery of damages for their claims or whether Fuelex itself declared the state suit involved plaintiff's claims—it is the actual status of the parties in the underlying action, not their avowals as to such, which determines whether they are privy for res judicata purposes.

Further, when Fuelex brought suit against Badger for redress of those same wrongs plaintiffs now allege, plaintiffs, insofar as they may be third party beneficiaries, were on notice of the pending disposition of all their current claims. Indeed, plaintiffs themselves admit both that "the same wrongdoing and misconduct that plaintiffs complain of" was the basis for the state suit, and that Fuelex "routinely and regularly advised plaintiffs" of matters concerning the interests affected by the state suit. Plaintiff's Response in Opposition to Defendant's Motion at 8. Plaintiffs should have raised, in the state action, the claims asserted in the instant action. Nevertheless, plaintiffs, for whatever reason, did not choose to do so. They cannot now demand a "bite of the apple" as private individuals where earlier they refused such an opportunity by not joining in Fuelex's identical claims as former corporate members or as interested parties under the contract. *Montgomery v. Whitehead*, 40 Colo. 320, 90 P. 509 (1907).

■ Even were I to find plaintiffs were not third party beneficiaries to the assignment agreement, and thus possibly not bound by the 1985 judgment, their claims must be dismissed since no actionable duty by Badger has been alleged, nor could it.

■ Tort law requires negligence claims to allege some duty on the part of the defendant. Before liability can be found in a negligence action, existence of a duty of care must be determined as a matter of law. *Lannon v. Taco Bell, Inc.*, 708 P.2d 1370, 1373 (Colo.App.1985). That determination requires consideration of the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the mag-

nitude of the burden of guarding against the injury or harm, and the consequences of placing the burden upon the actor. *Id.*

Plaintiffs first claim for relief alleges Badger owed a duty to exercise reasonable and prudent care to prevent the expiration or termination of the lease and to protect the reserved overriding royalty interests, and that Badger was negligent in breaching those duties. While phrased in the language of tort, this count is a mere rearrangement of a claim for breach of contract. Colorado law does not recognize an independent tort action for breach of contractual duties. *Strey v. Hunt International Resources Corporation,* 749 F.2d 1437, 1441 (10th Cir.1984), *cert. den.,* —— U.S. ——, 107 S.Ct. 237, 93 L.Ed.2d 162 (1986). Even if such a tort were recognized, plaintiffs would not fall within its purview unless they enjoyed a contractual relationship with Badger. The lease here is devoid of any such indication. In spite of onslaughts such as demonstrated in this case, the law of contract is not dead yet.

■ Plaintiffs' second claim for relief states Badger acted willfully and wantonly in its reckless disregard for the rights of the plaintiffs by intentionally allowing the Fuelex lease to expire. This language mimics the phrasing of the Colorado punitive damages statute, 1973 Colo.Rev.Stat. 13–21–102. Because I dismiss plaintiffs' other claims, actual damages are not available, and thus the claim for punitive damages is dismissed as well. *Leo Payne Pontiac, Inc. v. Ratliff,* 29 Colo.App. 386, 486 P.2d 477 (1971).

■ Plaintiffs' third claim alleges a breach of fiduciary duty by Badger. A corporation is held to the standards of a trustee for its stockholders, and therefore is bound by a fiduciary relationship to protect their interests. See generally *Supply Ditch Co. v. Elliott,* 10 Colo. 327, 15 P. 691 (1887). Merely because Badger was assigned certain interests under an agreement with Fuelex corporation, however, such does not lead to the conclusion that Badger became a trustee to Fuelex employees regarding those interests. The initial

fiduciary relationship is maintained between Fuelex and its own employees and is not somehow magically transferred to the assignee. No fiduciary duty exists on the part of Badger in regard to plaintiffs' claims of injury.

■ Alternatively, Badger does not owe plaintiffs any common law contract duty. If some provision in the contract between the corporations expressly named the plaintiffs as parties to the agreements, then a duty would exist. *See Globe Drilling Co. v. Cramer,* 39 Colo.App. 153, 562 P.2d 762, 764–5 (1977). Correspondingly, it might be held that Badger owed a duty to Fuelex to act reasonably, under a prudent operator standard, as a corporate assignee. *See North York Land Assoc. v. Byron Oil,* 695 P.2d 1188, 1190–1 (Colo.App.1984).

However, none of the above-mentioned relationships are at issue here. The real "ownership" rights to the assigned property in dispute lay in Fuelex as a corporate entity, not in its individual employees, no matter what collateral interests they may have been given. No contract has been executed between Badger and named plaintiffs, and the agreement between Badger and Fuelex makes no mention of plaintiffs. Moreover, Badger owed plaintiffs no duty in implied contract simply because they were employees of the contracting party with a financial interest in certain provisions of the agreement.

■ Generally, where a corporation is harmed by some action of a third party, its right to seek redress for that wrong belongs to the corporation. In actions such as the instant one, where the wrong alleged is in reality the corporation's wrong, shareholders have not been allowed to recover separately for indirect harm to their stock. *A.R.A. Mfg. Co. v. Cohen,* 654 P.2d 857 (Colo.App.1982). There is no reason why plaintiffs, similar in position to shareholders threatened with financial loss, should be allowed to proceed in antagonism to the general rule. *See Carper v. Frost Oil Co.,* 72 Colo. 345, 211 P. 370 (1922).

Plaintiffs' claims cannot win in this court. If they are considered third party beneficiaries, then principles of res judicata bind them to the consequences of the state stipulation and the complaint must be dismissed. If they are not third party beneficiaries, then no duty can be found on the part of Badger to support their claims, and the complaint must be dismissed. I find there is no genuine issue of fact concerning either the estoppel of plaintiffs claims by the state judgment or the finding of any duty on the part of the defendant. Consequently, summary disposition of plaintiff's claims is appropriate.

IT IS THEREFORE ORDERED:

1. Defendant's motion for summary judgment is GRANTED.

2. Plaintiffs' first, second, and third claims for relief are dismissed.

3. Plaintiff's fourth claim for relief for a complete accounting by the defendant is hereby mooted, and therefore dismissed.

4. Judgment shall enter accordingly, each side to bear its own costs.